(Decided 5th March, 1875.)

---

FRANKLIN G. MARTINDALE *vs.* WILLIAM E. BROCK, use of GEORGE H. DOBSON.

*The same Attorney cannot represent two Defendants in a proceeding hostile to one, and exclusively in the interest of the other— When a Judgment by Default and the Extension thereof will be Stricken out, and the Defendant allowed to appear and make his defence—Surety on a Bond entitled to claim only what he has actually paid in Satisfaction—Proper remedy of a Surety on a Bond, who has satisfied the same, against the Principal, under sec. 5, of Art. 9 of the Code—Quære as to the right of the Attorney of the creditor, under sec. 6, of Art. 9 of the Code, to assign a judgment against the Principal and Surety on a Bond which has been satisfied by the latter?*

A suit was instituted by the obligee in a bond with collateral conditions against M. the principal and D. who claimed to be surety thereon; but whether he was surety only, or one of the principals did not clearly appear

Martindale *vs.* Brock, use of Dobson.

from the evidence. The defendants were summoned and on the 8th of December, 1873, counsel appeared for them, and on the 12th, of the same month filed his pleas in their behalf; alleging substantially. 1st. That before the suit was brought, they had satisfied and fully discharged the bond by payment thereof. 2nd. That they had fully performed all the covenants and conditions on their part to be done and performed according to the terms and conditions contained in the bond. On the 12th of January, 1874, by the direction of the defendant D. alone, without the knowledge of his co-defendant M. the pleas were withdrawn, and on the same day, "a judgment by default for want of plea," was entered against both defendants, and extended for $3198.35, "damages assessed by the Court." Upon what proof the Court acted in ascertaining this amount did not appear in the record. At the time the suit was instituted the only sum for which the defendants were legally liable upon the bond was $500; and that sum was paid by D. in satisfaction of the judgment. The purpose for which the pleas were withdrawn, was to enable D. to avail himself of the judgment as a means of collecting the money which he alleged he had paid as surety on the bond for M. his co-defendant. The judgment was thereupon assigned to D. by the plaintiff's attorneys, and entered to his use; the assignment purporting to be made under sec. 6, of Art. 9 of the Code. On the day of the assignment, a writ of *fieri facias* and writ of attachment were issued against M. upon the judgment in the name of the obligee for the use of D. The next day M. appeared and filed a motion to quash the writs of *fi. fa.* and attachment, and to strike out the judgment. Among the reasons assigned in support of the motion was that the judgment was obtained by fraud and surprise practiced upon him by his co-defendant D. HELD:

1st. That the withdrawal of the pleas by the direction of D. alone, without the knowledge of his co-defendant M. for the purpose of enabling the former to avail himself of the judgment as a means of collecting the money which he alleged he had paid for the latter, as surety on the bond, was a proceeding hostile to M. and exclusively in the interest of D., in which it was impossible for them to be represented by the same attorney; it operated as a complete surprise upon M. who had no notice or knowledge of it, and who was virtually without counsel to represent him.

2nd. That the judgment by default having been erroneously entered and extended, should be stricken out, and the defendant M. allowed to appear and make his defence to the suit.

Where the surety on a bond has satisfied the same, he is entitled to claim from the principal no more than he has actually paid in satisfaction.

A surety on a bond who has paid the money due thereon, cannot legally recover the same by a suit in the name of the obligee against himself and his co-obligor. His proper remedy under sec 5, of Art. 9 of the Code, is to demand an assignment of the bond, "and by virtue of such assignment, to maintain an action in his own name against the principal debtor."

Whether a judgment against the principal debtor and surety in a bond, which has been satisfied by the latter, may be assigned under sec. 6, of Art. 9 of the Code, by the attorney of the creditor, *Quære?*

APPEAL from the Superior Court of Baltimore City.

The case is very fully stated in the opinion of the Court. The appeal was taken from the judgment by default, and the extension of the same; and from the order and opinion of the Court filed 2nd of February, 1874, refusing to strike out the said judgment, and from the opinion and judgment of the Court filed 21st of April, 1874, overruling the motion to strike out the entry to the use of George H. Dobson.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, MILLER and ALVEY, J.

*Charles J. Bonaparte* and *John Henry Keene, Jr.,* for the appellant.

A stronger case for the interposition of the Court to set aside a judgment by default obtained through surprise and fraud could not be presented. The victim was a co-defendant, whose business was paralized, his bank account attached, and all his affairs closed. The surprise and fraud was consummated in one day. It was deliberately planned and executed. In a moment it placed Martindale's property within the sheriff's grasp. *Ex debito justiæ,* this co-defendant was especially entitled to immediate relief. The judgment against him, should have been stricken out for fraud. *Montgomery vs. Murphy,* 19 *Md.,* 576; *Hall, et al.*

*vs. Holmes,* 30 *Md.,* 558; *People vs. Mayor, &c. of New York,* 19 *How. Pr. Rep.,* 289 ; *Farrington vs. Bullard,* 40 *Barb.,* 512 ; *Cleveland vs. Porter,* 10 *Abbott's Pr. Rep.,* 407. The right of Martindale to have the judgment stricken out, is not affected by the fact that the plaintiff Brock was no party to the fraud ; for even admitting that the suit was brought *bona fide,* and the judgment regularly, and for value, assigned to Dobson, yet the plaintiff having assigned all his interest in the judgment to Dobson, the fraud would enure directly to the benefit of the party guilty of it, and the striking out of the judgment would in no way affect the interest of the plaintiff Brock.

If Dobson had paid value to Brock for the assignment, he could not recover this payment from Brock, if the judgment were stricken out, since its failure was due entirely to his own fraudulent action, and he was, of course, fully cognizant of its infirmity when he purchased it. Brock's innocence of the fraud therefore constituted no reason, *after* the assignment of the judgment to Dobson, for the refusal of relief to Martindale, by the learned Court.

The "course of dealing" between Dobson and Martindale, referred to by the Court below, had nothing to do with the fraud charged against Dobson, which would be none the less a fraud were his accounts admitted to be correct ; but the facts that said accounts are disputed, and his statements as to his dealings with Martindale and others opposed to the weight of testimony in the record, tend to cast suspicion on Dobson, and to show that justice cannot be done between these parties except by striking out the judgment by default, and letting in Martindale to make whatever defences he may have on the merits to the claim of Brock against him and Dobson.

If the appellant is entitled to relief in Equity against this judgment, the same reasons which would justify the Circuit Court in granting an injunction against it, would justify the Superior Court, in the exercise of its *quasi* equitable juris-

diction, in striking it out. If the appellant would not be entitled to relief in Equity, there is the more reason why he should be granted it at law. *Evans' Practice*, 438; *Carrington vs. Holabird*, 17 *Conn.*, 530; *Montgomery vs. Murphy*, 19 *Md.*, 576.

The appellee's position is not aided by Art. 9, sec. 6 of the Code, for that only entitles a surety to execution upon an assignment; if the creditor will not assign, the surety must compel him to do so in Equity. *Creager vs. Brengle*, 5 *H. & J.*, 234; *Neptune Ins. Co. vs. Dorsey*, 3 *Md. Ch. Dec.*, 334; *Peacock vs. Pembroke*, 8 *Md.*, 348; *Smith's Exrs. vs. Anderson, et al.*, 18 *Md.*, 520.

The assignment of the judgment to Dobson by Messrs. Merrick and Smith, was invalid, because, an attorney, *qua* attorney, has no right to assign a judgment. *Murray vs. House*, 11 *Johnson*, 463; *Lewis vs. Woodruff*, 15 *Howard's Pr.*, 539; *Simonton vs. Barrol*, 21 *Wendell*, 362; *Norwood vs. Norwood*, 2 *H. & J.*, 238; *Peacock vs. Pembroke*, 8 *Md.*, 348; *Campbell's Appeal*, 29 *Pa. St.*, 401; *Connop vs. Challis*, 2 *Exch.*, 484; *Maddox vs. Bevan, et al.*, 39 *Md.*, 485.

If there were no valid assignment to Dobson by these gentlemen, the entry of the judgment to his use was improvident.

The custom relied on by the Court below, in refusing to strike out the entry to the use, was no justification of its action, because, a custom will not deprive a party of his legal rights. *Montgomery vs. Murphy*, 19 *Md.*, 576.

*Charles Poe*, for the appellee.

Dobson was a surety and not a principal upon the bond in controversy, and was therefore entitled to an assignment of the judgment upon satisfying it. *Art. 9, sec. 6 of the Code.* The recitals of the bond together with the testimony of the plaintiff, and of Victor Smith, Esq., the attorney who prepared the bond are conclusive upon this

point, and the proof clearly shows that he did satisfy the plaintiff's claim on the bond.

Mr. John P. Poe was perfectly justified in withdrawing the pleas upon being instructed to do so by Dobson, the party by whom he had been employed to file them. *Ward vs. Hollins*, 14 *Md.*, 158. If Mr. Poe has not fulfilled his professional engagements, the appellant's remedy is by a suit against him, and not by a motion to strike out the judgment. *Munnickhuyson vs. Dorsett*, 2 *H. & G.*, 374; *Henck vs. Todhunter*, 7 *H. & J.*, 275; *Art.* 11, *sec.* 12, *of the Code.*

There is no evidence of fraud, surprise or irregularity, and the Court, therefore, had no power to strike out the judgment. *Devries vs. Anders*, 26 *Md.*, 222.

By the immemorial usage and practice of the Court, the clerk was authorized to enter the judgment to the use of the appellee, upon the order of the plaintiff's attorney. And *cursus curiæ est lex curiæ; Brooms' Legal Maxims*, 104; *B. & O. R. R. Co. vs. Fitzpatrick*, 36 *Md.*, 619.

If there is any complication of accounts between the appellant and the appellee, the remedy is in equity by a bill for an injunction to stay the executions issued on this judgment, and for an account. *Flickinger vs. Hull*, 5 *Gill*, 60.

BARTOL, C. J., delivered the opinion of the Court.

On the 5th day of December, 1873, a suit was instituted in the name of William E. Brock against George H. Dobson and Franklin G. Martindale, upon their bond, for the penal sum of $20,000, conditioned for the performance by said Martindale and one James W. Krepps of certain covenants contained in Articles of Agreement entered into between Brock of the one part, and Martindale and Krepps of the other part. The condition of the bond, and the covenants in the Articles of Agreement are set out in the declaration, and need not be particularly mentioned here.

The defendants were both summoned and on the 8th day of December, 1873, John P. Poe, Esquire, appeared for them; and on the 12th day of the same month, filed two pleas in their behalf alleging substantially:

1st. That before the suit was brought they had satisfied and fully discharged the bond by payment thereof.

2nd. That they had fully performed all the covenants and conditions on their part to be done and performed, according to the terms and conditions contained in the bond.

On the 12th day of January, 1874, the pleas were withdrawn by Mr. Poe's order, and on the same day "*a judgment by default for want of plea,*" was entered against both defendants, which was on the same day extended for $3,198.35, "*damages assessed by the Court.*" Whereupon the following paper was filed:

" WILLIAM E. BROCK

*vs.*

FRANKLIN G. MARTINDALE and GEORGE H. DOBSON." } *In the Superior Court.*

" In pursuance of the provisions of section 6 of Article nine (IX) of the code of Public General Laws, I hereby assign the judgment recovered by me in the above entitled case to George H. Dobson, the surety upon the bond, the cause of action in said case, and hereby authorize and direct the clerk to enter said judgment to the use of said Dobson."

[Signed,]      WM. M. MERRICK and
VICTOR SMITH,

*Attorneys for Pltff.*

On the same day a writ of *fieri facias*, and a writ of attachment were issued against Martindale, upon the judgment in the name of Brock for the use of Dobson.

On the next day Martindale, the appellant, appeared by other counsel and filed a motion to quash the writs of *fi. fa.* and attachment, and to strike out the judgment.

Among the reasons assigned in support of the motion is that the judgment was obtained by fraud and surprise practiced upon the appellant, by George H. Dobson.

The affidavits of Brock, Martindale and Dobson were filed, and also the affidavits of Messrs. Merrick and Smith the attorneys of Brock; together with other papers; all of which have been carefully read and considered. In disposing of the questions presented by the appeal, we deem it unnecessary to refer particularly to much of the testimony contained in the record; which in some respects is contradictory.

It does not clearly appear what were the actual relations between Dobson and Martindale with respect to the transactions referred to in the bond, and the Articles of Agreement. The inference from the face of the bond would be that Dobson signed it only as surety. He so represented himself, and it is evident that he was so regarded both by the attorneys of Brock, and by his own counsel Mr. Poe; who appear to have been ignorant of the existence of the articles of co-partnership signed by him with Martindale, Krepps and Tilghman in September, 1872; whereby they mutually agreed to share the profits arising from the sales of the patent rights purchased from Brock, and to which the bond and Articles of Agreement referred. Brock testifies that this co-partnership was formed before the bond was executed. But whether before or afterwards, it is very doubtful whether Dobson, after entering into the co-partnership, could be entitled, under any circumstances to claim against Martindale, the rights belonging to a mere surety upon the bond. But if he was a surety only, he would be entitled to claim from the principal no more than he had actually paid in satisfaction of the bond.

The bond was originally conditioned for the payment of $10,000, absolutely, and upon certain contingencies, a

larger sum. It appears by Brock's testimony, that he had agreed to reduce the amount to $5000, and afterwards to $4000. A portion of this sum, he says, was paid by the firm of Martindale, Tilghman & Co. composed of Martindale, Dobson, Krepps and Tilghman; and he further testifies that the whole amount paid him by Dobson on the bond was $200. There seems however to be some confusion in Brock's statements in this respect. He appears to have confounded the bond in question, which related exclusively to the sales of patent rights in Illinois, with others relating to Missouri, Iowa and other States mentioned in the original Articles of Agreement. He says the bond relating to *Missouri* and *Iowa* was settled by Dobson paying him $1000, and that the latter required him to assign the same. This statement probably refers to the bond sued on in this case, as is shown by the assignment of May 22nd, 1873, produced with the affidavit of Mr. Smith the plaintiff's attorney. Without however, adopting Brock's statement: it appears from the uncontradicted proof in the cause, that in February, 1873, while Brock held the bond and Articles of Agreement, he borrowed from Victor Smith, Esq., $500, (the money of M. J. Nesbet) assigned to Miss Nesbet the bond and articles, and placed them in Mr. Smith's hands, as collateral security for the repayment of the loan, and took from Mr. Smith a receipt, in which it was stipulated that they should be returned to him on payment of the $500, "and in event of a suit, the balance, after payment of Miss Nesbet's claim and lawyers' fees should be returned to Brock."

In May, 1873, Mr. Smith, by the direction of Brock, instituted suit on the bond against Dobson and Martindale; but finding the suit was brought prematurely, it was stricken off, and in December following, this suit was brought, without further instructions from Brock. In the meantime, on the 22nd day of May, 1873, Dobson paid Brock $1000, in full satisfaction of the bond, and took from

him an assignment of all his rights and claims thereon—
except for the $500, due M. J. Nesbet.

Dobson states in his affidavit, that as surety he "paid
Brock the holder of the bond sued on in this case $3552.50,
including interest;" but no receipt or other evidence is pro-
duced to corroborate this statement, and it is contradicted,
not only by the testimony of Brock, but also by the assign-
ment of May 22nd, 1873, taken by himself; in which the
consideration paid by him is stated to be $1000.

But whatever may have been the amount paid by him
to Brock, it is very clear that at the time the suit was insti-
tuted, the only sum for which the defendants Dobson and
Martindale were legally liable upon the bond was $500,
the amount due to Miss Nesbet.

In no event could a judgment for any larger sum be pro-
perly rendered against Dobson and Martindale the defen-
dants in the suit.

The Code, Art. 9, sec. 5, authorizes a surety upon a
bond or other obligation, who has paid the money due
thereon, to demand an assignment thereof "*and by virtue
of such assignment, to maintain an action in his own name
against the principal debtor.*" Under this provision, the
remedy of Dobson, if he had paid to Brock the money due
on the bond, assuming he was surety, was to obtain an
assignment and sue the principal in his own name. He
could not legally recover the money so paid by him, by a
suit in the name of the obligee, against himself and his
co-obligor. In this case the suit does not appear to have
been instituted at his instance, he states that he had no
knowledge of it till the summons was served upon him.

The suit was brought by Victor Smith, Esq., to recover
the money due to Miss Nesbet, to secure which the bond
had been assigned to her by Brock, and as we have before
said, if the legal defences had been made to the suit, no
larger sum could have been recovered than the amount
due Miss Nesbet.

It appears from the proof that after the pleas had been filed on behalf of both defendants, Dobson conceived the purpose of availing himself of the pending suit, in order to recover the money which he considered Martindale owed him, and in execution of that design, arranged with Mr. Smith, the plaintiff's counsel to satisfy Miss Nesbet's claim and "to take charge of the suit;" accordingly without the knowledge of Martindale the co-defendant, he instructed Mr. Poe to withdraw the pleas, and allow "judgment by default for want of plea," to be entered against Martindale and himself; which was assigned to him by plaintiff's attorneys, and entered for his own use. This assignment purports to have been made in pursuance of sec. 6, Art. 9, of the Code. That section provides that "where any person shall recover a judgment against the principal debtor and surety, and the judgment shall be satisfied by the surety, the creditor shall assign the same to the surety, and such assignment being recorded in the Court where the judgment was rendered, the assignee shall be entitled to execution in his own name against the principal."

In this case the judgment was extended by the Court for $3198.35. Upon what proof the Court acted in ascertaining this amount does not appear in the record. But it is very clear from the evidence of Mr. Smith, plaintiff's attorney, that the judgment for that amount, was not satisfied by Dobson after it was rendered. The only sum paid by him, was the amount due to Miss Nesbet assignee; and whether that was actually paid before, or after the judgment, does not appear.

The Code provides that the assignment shall be made by the *creditor;* whether it is competent for the attorney to make it, is a question not necessary for us to decide in this case, and we express no opinion upon it. Nor is it material to consider whether the bond sued on, was one upon which the damages might be assessed by the Court, under the Act of 1864, ch. 175, without the intervention

of a jury. Waiving these questions, it is evident that the judgment was erroneously extended. According to the proof in the cause, it is impossible that a judgment for such a sum could properly be rendered against both the defendants.

But the evidence shows that the pleas were withdrawn by the direction of Dobson alone, without the knowledge of his co-defendant; for the purpose of enabling Dobson to avail himself of the judgment, as a means of collecting the money which he alleges he had paid for Martindale, as his surety upon the bond. This proceeding was one hostile to Martindale, and exclusively in the interest of Dobson, in which it was impossible for them to be represented by the same attorney; and it operated as a complete surprise upon Martindale, who had no notice or knowledge of it, and who was virtually without counsel to represent him.

Without imputing to Dobson any intentional fraud; or casting any imputation upon the conduct or good faith of any of the counsel engaged in the cause, it is evident that the proceedings whereby the pleas were withdrawn, and the judgment was allowed to be entered, and the assignment made to Dobson, in the manner stated in the record, were the result of error, and operated as a surprise upon the appellant.

In our opinion justice requires that the judgment by default and the extension of the same be stricken out, and the appellant be allowed to appear and make his defence to the suit. To that end, the order of the Superior Court overruling the motion to strike out the judgment will be reversed and the cause remanded. The judgment being stricken out, the entry of the use should, of course, be stricken out also, and the executions quashed.

*Orders reversed, and*
*cause remanded.*

(Decided 3rd March, 1875.)