ANTHONY W. DIMOCK ET AL. v. THE UNITED STATES NATIONAL BANK.

1. Suit on a note for $50,000, dated April 15th, 1884, at four months, given by defendants to plaintiff for money loaned, with a pledge of bonds and stocks as collateral security, with power to sell on non-performance of any of the promises therein contained, without demand of payment, advertisement or notice of time or place of sale, with a further agreement that in case of depreciation in the market value of the securities the defendants should, upon demand. make a payment on account of the loan, so that the market value of the securities should be more than the amount unpaid, and that in default of such payment the holder might immediately reimburse himself by the sale of the securities. The plaintiff sold the securities before the maturity of the note, the market value of the securities having then fallen below the amount of the loan. The sale was made after a demand of payment not in strict conformity with the contract. The defendants claimed damages by way of recoupment for the unauthorized sale of the securities as for a conversion. *Held*—

1. That the general rule that the measure of damages for conversion is the market value of the property at the time of the conversion, is not applicable to the conversion of stocks and bonds, which are commercial securities of a fluctuating value in the market.

2. That the rule that the highest intermediate value between the time of the conversion and the time of the trial is not the proper measure

of damages, and that the true measure of damages in such cases is the highest intermediate market value between the time of the conversion and a reasonable time after notice of the conversion within which to replace the securities.

3. When commercial securities pledged as collateral for the payment of a debt are sold by the pledgee, without authority, before the maturity of the debt, the pledgor may, at his election, either (1) ratify the sale and claim the proceeds, or (2) treat the unauthorized sale as a conversion, and recover the advance in the market price from the time of the sale up to a reasonable time within which to replace the securities, or (3) hold the pledgee for the breach of his duty to keep the property pledged until the maturity of the debt, and claim as damages the market value of the securities at.that time.

2. When a case is tried by the judge, a jury being waived, and a general exception to his finding is taken, if there be evidence to sustain the finding, the exception will not be sustained.

---

This suit was brought upon a note, of which the following is a copy :

" $50,000.          NEW YORK, April 15, 1884.

" Four months after date without grace, we promise to pay to the United States National Bank, or order, at its office in the City of New York, the sum of Fifty thousand 00–100 for value received, with interest at the rate of six per cent per annum payable—having deposited herewith, and pledged as collateral security to the holder thereof, the following property, viz :

" 200 shares Bankers & Merchants Tel. Stock.

" 200    "    Missouri Pacific R. R. Stock.

" 200    "    Delaware, Lac. & W. R. R. Stock.

" 15    "    Central Iowa, Ill., Div. 1st Bonds, with authority to the holder hereof to sell the whole of said property, or any part thereof, or any substitute therefor, or any additions thereto, at any Broker's Board, in the City of New York, or at public or private sale in said city or elsewhere, at the option of such holder, on the non-performance of any of the promises herein contained, without notice of amount claimed to be due, without demand of payment, without ad-

vertisement and without notice of the time and place of sale, each and every of which is hereby expressly waived.

"It is agreed that in case of depreciation in the market value of the property hereby pledged (which market value is now $—— ) or which may hereafter be pledged for this loan, a payment shall be made on account of this loan upon the demand of the holder hereof, so that the said market value shall always be at least —— per cent. more than the amount unpaid of this note and that in case of failure to make such payment, this note shall, at the option of the holder hereof, become due and payable forthwith, anything hereinbefore expressed to the contrary notwithstanding, and that the holder may immediately reimburse—by sale of the said property or any part thereof. In case the net proceeds arising from any sale hereunder, shall be less than the amount due hereon —— promise to pay to the holder, forthwith after such sale, the amount of such deficiency with legal interest.

"It is further agreed, that any excess in the value of said collaterals, or surplus from the sale thereof beyond the amount due hereon, shall be applicable upon any other note or claim held by the holder hereof against —— now due or to become due, or that may be hereafter contracted and that, if no other note or claim against —— is so held, such surplus, after the payment of this note shall be returned to —— or —— assigns.

"It is further agreed that upon any sale by virtue hereof, the holder hereof may purchase the whole or any part of such property discharged from any right of redemption, which is hereby expressly released to the holder hereof, who shall retain a claim against the maker hereof for any deficiency arising upon such sale.

"A. W. DIMOCK & Co."

The other facts appear in the opinion of the court.

On error to the Union Circuit.

For the plaintiff in error, *Bradbury C. Chetwood*.

*Contra, Edward A. & William T. Day.*

The opinion of the court was delivered by

DEPUE, J.   The note on which this suit was brought was in terms made payable in four months after date.   It became due August 15th, 1884.   This suit was brought May 21st, 1891.   The suit was in all respects regular, and its regularity was in no wise dependent upon that paragraph in the pledge of securities which, upon certain conditions, accelerated the maturity of the note and made the money payable at a time earlier than that named on its face.

The securities pledged for the payment of the note were sold by the plaintiff on the 15th of May, 1884, as the note matured in the following August.   From the sale the sum of $45,456.26 was realized, leaving a balance due on the note of $4,456.25, for which the plaintiff claimed judgment. The defendants' contention was that the sale in May was un- authorized, and amounted in law to a conversion.   In all other respects the sale was in conformity with the power. On the theory that the sale at the time in question was un- authorized, the defendants contended that they were entitled to have the value of the securities allowed to them at their highest market price between the conversion and the time of the trial.   The defendants gave in evidence the fact that in December, 1886, and April and May, 1887, these securities were worth in the market the sum of $56,860—sufficient to pay the plaintiff's note and leave a balance of $6,860 due the defendants.

The defendants' claim was disallowed, and judgment given for the plaintiff for the sum of $4,456.26, being the balance due on the note after crediting on it the proceeds of sale, with interest.

The case was tried by the judge, a jury being waived.   A general exception was taken to his finding.   Upon such an exception, if there be evidence to sustain the finding, the ex- ception will not be sustained.

The plaintiff is a national bank located in the city of New York. The defendants, at the time of these transactions, were bankers and brokers in New York. The debt for which the note was given was a loan of $50,000 to the defendants. The form of the contract pledging securities for the repayment of loans is such as is usual in that city. It must be assumed that the parties were aware of the effect of the terms of such contracts, and with the course of dealing in that market with securities pledged as security for loans.

By the first paragraph in the defendants' contract the plaintiff was authorized to sell the securities at any broker's board in the city of New York, or at public or private sale in said city or elsewhere, at its option, on the non-performance of any of the defendants' promises therein contained, without any notice of the time and place of sale. This contract was embodied in and made part of the note itself, and the promise to pay in the note was one of the promises on the non-payment of which a sale was authorized. The sale was made through a firm of brokers who were members of the stock exchange in New York city. There is no foundation in the evidence for complaint of the manner or fairness with which the sale was conducted.

The power of the plaintiff to sell the securities before the four months named in the note had expired, depends upon the construction and effect of the second paragraph of the contract. There was some discussion on the argument as to the right to fill the blanks in that paragraph. The evidence was not sufficient to justify the court in filling the blanks. The contract will be construed in the condition it was in when it was delivered to the plaintiff. In this paragraph it is provided that in case of a depreciation in the market value of the property pledged, the defendants should, on demand by the holder of the note, make a payment thereon, so that the market value of the securities should always be more than the amount of the debt; and that in case of the failure of the defendants to make such payment, the note should, at the

payee's option, become due forthwith, and that the plaintiff might immediately reimburse itself by the sale of the property or any part thereof; and that in case the net proceeds of such sale should be less than the amount then due on the note, the defendants should forthwith, after such sale, pay the amount of such deficiency, with interest.

The power to sell the securities before the maturity of the note, according to its terms, was made to depend upon the concurrence of two conditions—the depreciation in the market value of the property pledged, and the failure of the defendants, after demand, to make a payment on account of the loan, so that the market value of the securities pledged should be more than the amount due on the note.

The proof was that on the 6th of May, 1884, the firm of Grant, Ward & Co. failed, and the Marine bank closed its doors. On the 14th the Metropolitan bank closed its doors, and a number of leading bankers failed. These failures created a panic in the money market, and a great depreciation in the market value of all commercial securities. Early on the morning of the 15th, the defendants' embarrassments led them to an assignment for the benefit of their creditors. It fully appeared that at the commencement of business hours on the morning of May 15th, the securities pledged had so depreciated that their market value was considerably below the amount of the plaintiff's debt. Under a pledge with a power of sale such as exists in this case, the pledgee, unless restrained by other conditions in the contract of pledge, has a right to sell whenever the condition of the market makes it prudent for him to do so for the protection of his interests.

The other condition was that a demand should be made upon the defendants, and that upon such demand the defendants should pay on account of the note a sum sufficient to reduce the amount due below the market value the securities then had. The case shows that at the beginning of business hours on the morning of the 15th, two notices were served on the defendants. One of these notices was in a form, signed by the cashier of the bank, in these words : " I hereby call

your loan of April 15, 1884, for $50,000." This notice was plainly not a demand in conformity with the condition expressed in the contract. A depreciation in the market value of the securities pledged did not convert the loan, which was made on four months' time, into a call loan. That condition of affairs imposed upon the defendant the obligation, not to pay the note in full, but by a payment upon it to reduce the loan until the amount remaining due was under the market value of the securities. It appeared in evidence that the other notice served was "a demand for the payment on account of the loan to a degree corresponding to the depreciation of the securities." Neither the original notice nor a copy was produced. The witness who testified upon this subject was not able to state the amount of the depreciation, but he added that such depreciation was known to both the borrower and lender.

The object of a demand in a contract of this sort is to give the party an opportunity to comply with the terms of his contract and preserve his securities from sale before the expiration of the time for which the loan was negotiated; and it would be reasonable that in making the demand the party, before he is put in default, should have been made aware of the extent of the depreciation, approximately, at least, and the sum required to be paid to save his rights should be specified. If the case rested solely on the sufficiency of the demand made, I should have some hesitation in sustaining this judgment.

Assuming that the sale of the securities in May was unauthorized, it was a conversion of the property, though the sale was made in good faith. Nevertheless, the judge's finding and the rule of damages applied were correct.

The general rule is, that the measure of damages for conversion is the value of the property at the time of the conversion. This rule has been modified with respect to the conversion of stocks and bonds, commercial securities vendible in the market, the market value of which is liable to frequent

and great fluctuations caused by the depression and inflation of prices in the market.

In *Markham* v. *Jaudon,* 41 *N. Y.* 235, the Court of Appeals held that as between a customer and his broker, holding stock purchased for the former, which had been pledged as security for advances made in the purchase, the measure of damages for the conversion by an unauthorized sale was the highest market price between the time of the conversion and the trial. Relying upon this case, the defendants put in evidence no proof of value except the market value in December, 1886, and April and May, 1887. But Markham *v.* Jaudon has been overruled by a series of cases in the New York courts, and the rule adopted that in such cases the principal may dis-affirm the sale, and that the advance in the market price from the time of sale up to a reasonable time to replace it, after notice of the sale, was the proper measure of damages. *Baker* v. *Drake,* 53 *N. Y.* 211; *S. C.,* 66 *Id.* 518; *Gruman* v. *Smith,* 81 *Id.* 25; *Colt* v. *Owens,* 90 *Id.* 368. These decisions were made in cases where the transactions were dealings between the customer and broker in the purchase and sale of stocks on a margin. Subsequently, the same rule was applied where the owner of stock, for which he had paid full value and which he held as an investment, put it in the hands of a broker as collateral security for the debt of a third person, upon condition that it should not be sold for six months, the stock having been sold without the owner's authority before the expiration of that time. Under the decisions of the New York courts, reasonable time, where the facts are undisputed, is a question of law for the court. *Wright* v. *Bank of Metropolis,* 110 *N. Y.* 237. In *Colt* v. *Owens,* 90 *N. Y.* 368, thirty days after the sale and notice of it was regarded as reasonable time. The rule of the highest intermediate value between the time of the conversion and the time of the trial has been rejected in the Supreme Court of the United States as the proper measure of damages, and the rule that the highest intermediate value between the time of the conversion and a reasonable time after the owner has received notice of it, was adopted

as the correct view of the law, for the reason, as expressed by Mr. Justice Bradley, that more transactions of this kind arise in the State of New York than in all other parts of the country, and that the New York rule, as finally settled by its Court of Appeals, has the most reason in its favor. *Galigher* v. *Jones,* 129 *U. S.* 193.

The principle upon which this doctrine rests is the consideration that the general rule that, in an action for a conversion, the market value of the property at the time of the conversion would afford an inadequate remedy, or rather no remedy at all, for the real injury, which consisted in the wrongful sale of property of a fluctuating value at an unfavorable time, chosen by the broker himself. Hence, the cost of replacing the securities by a purchase in the market, allowing a reasonable time for that purpose, has been regarded as the proper measure of damages. As was said by Mr. Justice Bradley in Gallagher *v.* Jones : "A reasonable time after the wrongful act complained of is to be allowed to the party injured to place himself in the position he would have been in had not his rights been invaded." The general rule that the market value at the time of the conversion is the measure of damages, being found to be impracticable in these cases, and having been abandoned, the effort has been to obtain some rule by which substantial justice, as near as may be, may be attained. In England the market value at the time of the trial appears to be the measure of damages. *Owen* v. *Routh,* 14 *C. B.* 327. In some of the sister states the rule of the highest intermediate price before the trial has been adopted. In New York and in most of the sister states, as well as in the Supreme Court of the United States, the formula which has been called the New York rule has been adopted, and is the rule which will accomplish the most complete justice in the ordinary transactions between the broker and his customer dealing in stocks when an unauthorized sale is the act of conversion. In such cases the customer has a choice of remedies. He may claim the benefit of the sale and take the proceeds ; he may require the broker to

replace the stock, or replace it himself and charge the broker for the loss, or he may recover the advance in the market price up to a reasonable time within which to replace it after notice of the sale. *Cook Stocks,* § 460. But where stocks and negotiable securities are pledged as collateral security for the payment of a debt to become due and payable on a future day, another element enters into the consideration of the compensation to be awarded to the owner of the securities for the unauthorized sale of them before the debt matures. Upon such a bailment it is the duty of the pledgee to keep the securities in hand at all times ready to be delivered to the pledgor on the payment of the debt. *Cook Stocks,* §§ 469, 471. An unauthorized sale before the debt matures is a conversion for which the pledgor may have remedy in the manner above mentioned. But the sale may be made when the market value is depreciated and the market with a downward tendency ; the market may revive and prices be enhanced before the debt matures. Under such circumstances a rule that the pledgor shall be at liberty to elect to treat the unauthorized sale as a conversion, or to hold the pledgee for the breach of his duty to keep the securities until the maturity of the debt, and recover as damages the market value of the securities as of that time, would commend itself in reason and justice. As applied to the facts of this case, this rule would be eminently just. The plaintiff in good faith sold the securities in the manner authorized by the contract of pledge ; the breach of duty was in selling at an unauthorized time. The debt was not paid or tendered at maturity, and if the plaintiff had held the stock and sold it at that time the sale would have been strictly in conformity with the power. If the defendants lost anything by the sale at a time unauthorized, they would be recompensed for that loss by an award of damages equivalent to the market value of the securities at the time the debt became due. Tested by either of these standards the proper credit was allowed, the proof being that the prices of the securities were less when the note matured than when the

securities were sold.   No evidence of an increased price prior to December, 1886, was produced.

The finding of the judge should be affirmed on the ground, also, that the sale was consented to and ratified by the defendants.

The notices served on the morning of May 15th informed the defendants that the securities pledged had, in the plaintiff's estimation, depreciated in market value, and that the contingency provided for in this part of the contract had happened, and also plainly indicated the purpose on the part of the plaintiff to avail itself of the right which, under those circumstances, would accrue under the contract.   Immediately after the sale was made, the defendants had notice of the fact of sale, and, very shortly after, of the amount realized therefrom.   No objection was made to the sale or the amount realized.   On June 4th, 1884, the defendants filed a schedule of their indebtedness under their assignment.   This schedule was verified by the oaths of the defendants, that it contained a true account of their creditors and of the sum owing to each, and also a statement of any existing collateral or other security for the payment of such debt.   In this statement the plaintiff was put down as a creditor for the sum of $4,737.50, which was about the amount due the plaintiff after the proceeds were applied to the debt; and to this specification of the existing debt due the plaintiff was appended a statement that, for the payment of this debt, there was no existing collateral or other security.   In September, 1885, the defendants caused to be presented to the plaintiff a composition agreement, with a view to a compromise with their creditors, in which the debt due the plaintiff was stated to be the sum of $5,118.87, figures which represented approximately the net amount due the plaintiff on the note after applying thereon the proceeds of the sale of the securities, with interest.   This agreement was signed by the plaintiff, but the project fell through, the defendants being unable to effect a compromise with all their creditors.

The defendants had the election either to ratify the sale

-and claim the benefit of it, or repudiate it and hold the plaint-
iff in damages.   The act of the defendants in applying the
proceeds of the sale as a credit on the plaintiff's note, is so
positive and emphatic an act of ratification and adoption that
it cannot be retracted.

The case was properly decided at the trial, and the judg-
ment should be affirmed.

*For affirmance*—The Chancellor, Chief Justice, De-
pue, Dixon, Garrison, Magie, Reed, Scudder, Werts,
Bogert, Brown, Clement, Smith, Whitaker.   14.

*For reversal*—None.