*278 OPINION.
Smith :
The petitioner alleges in its petition that, (1) the Commissioner erred in disallowing Central Teresa Sugar Co., a New Jersey corporation, and a subsidiary of the petitioner, the Central Teresa Sugar Co. of Maryland, a deduction from gross income of $167,-425.05 paid by Central Teresa Sugar Co. of New Jersey to Alfred W. Gi eslíe, the endorser of and pledgor under certain of its notes, to reimburse the said Gieske for losses suffered by reason of the sale of certain collateral pledged by him; and (2) the Commissioner erred in reducing invested capital of the taxpayer by $167,425.05 on the assumption that Alfred W. Gieske withdrew the said amount, presumably as a stockholder when he was not, except for one qualifying share.
The petitioner claims in this proceeding that the New Jersey Co., a company affiliated with the petitioner, sustained a deductible loss for the fiscal year ended July 31, 1920, in the amount of $167,425.05 representing the enhancement in value of the Cosden & Co. stock from the date of sale by the Fidelity Trust Co., trustee, in December, 1918, and January, 1919, to September 29, 1919, the date upon which Gieske made demand upon the New Jersey Co. for the payment of damages and interest. The petitioner- claims the benefit of the deduction by reason of the fact that it filed a consolidated return with the New Jersey Co. The deduction is claimed as a loss sustained by the New Jersey Co. in the year 1919. The deduction of the loss is resisted by the respondent upon various grounds, one being that the evidence does not prove the fair market value of the Cos-den & Co. stock either at the date of sale by the trustee or on September 29, 1919, the date upon which Gieske made a demand for damages. It is not necessary, however, for us to decide the question upon the point of lack of evidence:
The petitioner contends that Gieske entered into a contract with the New Jersey Co. in support of the agreement of June 12, 1918, referred to in the findings of fact; that under this agreement the *279 New Jersey Co. was obligated to return to Gieske the collateral put up by Gieske with the Fidelity Trust Co. for the benefit of the New Jersey Co. The evidence does not, however, support the contention that Gieske under a separate contract lent his stock to the New Jersey Co. The record contains no evidence of any separate contract or agreement between Gieske and the New Jersey Co. relating to the pledging of the stock. The minutes of a meeting of the board of directors of the New Jersey Co., at which the payment of Gieske’s claim was authorized, stated:
At this point Mr. Gieske called Mr. France to the chair and retired from the meeting. The Treasurer presented a statement received from Mr. Gieske showing the amount due him by this Company on account of 30,000 shares of the capital stock of Cosden and Company loaned to it as security under an Indenture dated June 12, 1918, to The Fidelity Trust Company, Trustee, which stock had been sold by said Trustee in accordance with the provisions of said Indenture. * * * (Italics ours.)
There is no testimony or other evidence that there was any agreement involved other than the deed of trust executed June 12,1918.
The evidence does not show the cost of the Cosden & Co. stock to Gieske. It does show, however, that the trustee sold this stock in December, 1918, and January, 1919, and that the net proceeds therefrom were $210,447.95. This amount was credited to the New Jersey Co. in respect of its indebtedness on the notes. Gieske knew of the sales of this stock at the time they were being made. There is no evidence that the shares of stock were not sold by the trustee at market price. Gieske consulted his own attorney, who was likewise the attorney of the New Jersey Co., at the time that the sales were being made as to his rights in the matter. He was advised that inasmuch as the company did not have sufficient funds at that time he should delay making his demand until such time as the company did possess sufficient funds. Gieske, accordingly, delayed making his demand until September 29, 1919.
What is the measure of the damages which may be claimed by bailor or surety in respect of pledged property which has been sold by the bailee or principal in accordance with the terms of the contract under which the property was pledged? It is stated in 32 Cyc. 272 that:
Prima facie the amount due from the principal to the surety is the face value of the claim of the creditor; but the surety is not allowed to speculate on his principal, and can not collect any more than the amount actually paid by him, although he may have taken an assignment of the claim. The same rule governs between a supplemental surety and a surety. The surety can not recover for remote and indirect losses suffered by him which could have been avoided by payment of the debt.
See Martindale v. Brock. 41 Md. 571.
*280 In Stone v. Hammell, 83 Cal. 541; 23 Pac. 103, it was stated:
The general rule is, undoubtedly, that a surety can recover of the principal only the amount or value which the surety has actually paid. If he has paid in depreciated bank-notes taken at par, he can recover only actual value of the bank-notes so paid and received. If he has paid in property, he can recover only the value of the property. If he has compromised, he can recover only what the compromise has cost him. The rule is that he shall not be allowed to “ speculate out of his principal.” * * *
Upon the conversion of chattels the measure of the pledgor’s damages is the market value of the chattel^ at the time of conversion. Dimock v. United States Nat. Bank, 55 N. J. L. 296; 25 Atl. 926; Kilpatrick v. Dean, 3 N. J. Supp. 60. In the case of a sale of stocks the pledgor is ordinarily entitled to receive the highest value reached by the stocks between the date of sale and a reasonable time after he has received notice of it so as to enable him to replace the stocks. Griggs v. Day, 158 N. Y. 1; 52 N. E. 692. In Maryland, however, the rule is that the measure of damages is the value of the stock at the time of its conversion and this is the rule whether the action is an action in tort or one in assumpsit. Franklin Bank of Baltimore v. Harris, 77 Md. 423; 26 Atl. 523; Baltimore Md. Ins. Co. v. Dalrymple, 25 Md. 269. Gieske clearly had notice of the sale of his Cosden & Co. stock at the time it was sold and the evidence indicates that it would not have been difficult for him to replace the stock at the market price in December, 1918, or January, 1919. The mea£ure of the damages to which he was entitled was therefore not in excess of the price at which the stock was sold by the trustee. That price was $210,447.95 and the petitioner is making no claim with respect to any loss upon that amount. Nor could such claim be made, because the New Jersey Co. was credited with that amount upon the books of the trustee. Nor is there any claim for interest in respect of the amount realized by the trustee upon the sale of the Cosden & Co. stock. Any claim for interest that Gieske might have made against that company was settled by the agreement of June 12,1919, whereby Gieske received notes of the West India Co. in the amount of $549,-120.28. We can not find that there is any merit in the petitioner’s claim for the deduction of the $167,425.05. The amount was not a liability of the New Jersey Co. Why the company paid the amount to Gieske ⅛ not clear from the evidence. The relationship of Gieske to the petitioner and the West India Co. is not shown by the record. Gieske was president of both the West India Co. and the New Jersey Co., and during the year 1919 received a salary from each. The record indicates that the transaction between Gieske and the several corporations which he controlled were not arm’s-length transactions. The payment bjr the New Jersey Co. to Gierke of $167,425.05 may have been nothing more than a distribution to Gieske of a portion of the profits of that company for the taxable year involved, the dis *281 tribution being made directly to Gieske rather than through the West India Co. The action of the respondent in disallowing the deduction of $167,425.05 from the gross income of the New Jersey Co. for the fiscal year ended July 31, 1920, is sustained.
The Commissioner has reduced the consolidated invested capital of the petitioner and affiliated companies for the taxable year ended July 31, 1920, by the amount paid to Gieske in October of that year by the New Jersey Co. from the beginning of the fiscal year. This was error, since, as we found, there existed no liability on the part of the New Jersey Co. at the beginning of the year in respect of the amount later paid to Gieske. The invested capital of the consolidated group should be reduced from the date the payment was made.
Reviewed by the Board.

Judgment will be entered under Rule 50.