WILLIAM C. DURANT, PLAINTIFF-APPELLANT, v. BENJA-MIN BLOCK, J. HORACE BLOCK, WILLIAM B. ANDER-SON, ALFRED L. ROSENER, ALBERT F. STRAIGHT, WILLIAM B. GILES AND BERNARD MILLER, CO-PARTNERS, TRADING UNDER THE FIRM NAME AND STYLE OF BENJAMIN BLOCK & COMPANY, DEFEND-ANTS-APPELLEES.

Argued May 18, 1934—Decided October 5, 1934.

For the plaintiff-appellant, *Perkins, Drewen & Nugent* (*Robert H. McCarter, John Drewen, R. Randolph Hicks* and *William D. Scott*).

For the defendants-appellees, *Applegate, Stevens, Foster & Reussille* (*Max D. Steuer, Abraham L. Bienstock*).

The opinion of the court was delivered by

BODINE, J. The plaintiff, a speculator in stocks, appeals from a judgment upon a counter-claim in favor of the defend-

ant stockbrokers. The action was brought to recover damages for alleged improper sales of stocks pledged in a brokerage account. The defendant counter-claimed for a balance due for moneys advanced. The parties entered into a written contract as a basis for dealings. This agreement, in substance, was as follows: (1) All transactions were subject to the rules and customs of the New York Stock Exchange, or any other exchange where business was usually transacted; (2) securities carried in the margin account could be loaned or pledged; (3) brokers could buy or sell in the exercise of their sole judgment and discretion on any exchange, or at public auction or private sale without advertisement, demand or notice. The agreement signed by the plaintiff further provided: "It being understood that if at any time during the continuance of this account demand or call is made upon me and/or notice of sale and/or purchase is given to me, such demand or call and/or such notice shall in nowise affect your rights under this consent or agreement, and it is understood by me that in the event demand or call is made and/or notice given in connection with the sale or purchase of any securities which you may be carrying or have borrowed for me, I understand that you may, in your sole discretion and judgment, sell and/or buy said securities in disregard of the demand made/or notice given, upon which demand and/or notice, I understand I have and shall have no right to rely. This consent or agreement shall at all times be in full force and effect during the continuance of this account and shall not be deemed altered, waived or abrogated by any oral agreement or so-called course of conduct on your part or otherwise than by a new written consent or agreement signed by me and accepted by you for the purpose of supplanting this consent or agreement."

It will be recalled that stock exchange values were most unsettled in the fall of 1930. The brokers had required that the plaintiff maintain a margin of twenty-five per cent. He, however, denied any definite obligation respecting margins, or anything else for that matter. The account was a large one, and although the execution of orders was often profitable

the hazard in a loan of nearly three millions of dollars against collateral subject to wide fluctuation was indeed great. It is obvious that the contract and the usual course of dealings on the exchange required that the plaintiff keep the account adequately secured.

On September 1st, 1930, the plaintiff's equity was twenty-nine per cent. of his account. By the end of the month a rescission in values placed the margin at but twelve and one-half per cent. The plaintiff then left New York City ostensibly on business and it became difficult, if not impossible, to communicate with him. By the first of October, by reason of sales and a rise in the market, his account was strengthened for a day. The market, however, continued to recede. The demand for additional margin or collateral was incessant. The plaintiff remained in the west and furnished nothing. He returned to New York City on October 10th, 1930, when his financial affairs and those of his brokers were in a desperate plight. The pledged securities, at the opening of the exchange, were worth $9,362 above the debt. The market receded so swiftly that by noontime the stocks were worth far less than the debt. The plaintiff and the head of the brokerage firm met to discuss what could be done. The plaintiff admitted that he was at the end of his resources and had nothing unpledged except some unlisted securities, promissory notes and other oddments which he delivered to the defendant brokers. Plaintiff said delivery was made on their promise that they would not sell him out. The making of such a promise they stoutly denied. It is perhaps significant that the next day they began to liquidate his account in an orderly manner. It is difficult to understand what else they could have done unless they desired to assume plaintiff's disastrous speculative position. He had transferred to them the last assets he possessed, and his debt to them was still for far more than the value of the assets held under pledge.

The learned trial judge, before whom the case was tried without a jury, found as a fair inference from the testimony that the defendant did not make a binding contract not to sell until a reasonable time had elapsed. But he also found

that their words did constitute a waiver of the right to immediately sell and that sales made on October 11th were without reasonable notice.

The argument is made that there was error in the trial court's finding that there was no binding agreement to forebear sale of the securities pledged. There can be no doubt of the defendant's right to call for money or additional securities to protect the account and no doubt of the plaintiff's obligation to comply therewith. The written agreement of the parties gives the right and imposes the duty. The doing of that which one is already bound to do has never been regarded as consideration for a new promise.

"A promise to do what the promisor is already bound to do cannot be a consideration, for if a person gets nothing in return for his promise but that to which he is already legally entitled, the consideration is unreal. Therefore, as a general rule, the performance of, or promise to perform, an existing legal obligation is not a valid consideration." 13 *Corp. Jur.* 351.

Assuming, but not deciding, that the court below properly found that, in view of the contract, there was a waiver by the brokers of their right to immediate sale, it seems to us clear from all the facts and circumstances of this case that the sales on October 14th, 1930, and subsequent thereto, were conducted in a proper manner and upon reasonable notice. Such, at all events, was the trial court's finding of fact and the evidence abundantly supports the conclusions. The finding is, therefore, not reversible here.

It also seems to us that since the plaintiff was more than familiar with stock exchange transactions and had bought and sold thousands of shares of stock and dealt with a score or more of brokers, that two trading days were more than ample for him to determine the course which he would take respecting the stock which the court found was improperly sold on October 11th, 1930. Therefore, the assessment of damages was properly made, conceding as we must by reason of the record that the sales on October 11th were improper.

The judgment is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 15.

*For reversal*—None.