Jack BERMAN

v.

**AIRLIFT INTERNATIONAL, INC., a Florida Corporation (formerly called Riddle Air Lines, Inc.)**

Civ. A. No. 10694.

United States District Court
N. D. Georgia,
Atlanta Division.

March 31, 1969.

Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for plaintiff.

Sutherland, Asbill & Brennan, Atlanta, Ga., Melrod, Redman & Gartlin, Washington, D. C., for defendant.

ORDER

ALBERT J. HENDERSON, Jr., District Judge.

In this suit for damages, plaintiff alleges that he has suffered loss, under the Florida version of the Uniform Commercial Code, Fla.Stat., Tit. XXXVIII, because of defendant's failure to register a transfer of stock. Defendant argues that the case law existing in Florida before the effective date of the Uniform Commercial Code applies, and that, under the Florida pre-Code rule for the measure

of damages for conversion of stock, plaintiff has suffered no damage. The court generally agrees with the defendant, and grants its motion for summary judgment.

The defendant, Airlift International, Inc., hereinafter known as Airlift, is a Florida corporation which, in 1962, was in a state of failing financial health. By June, 1962, Airlift had become insolvent, and refinancing was begun. For reasons not pertinent here, potential lenders refused to make funds available unless Airlift's president, Robert M. Hewitt, resigned from office, resigned as a director, promised not to interfere further in the management of defendant, and placed all of the defendant's stock which he owned or subsequently acquired in a voting trust, with the new president, James B. Franklin, as voting trustee. During the same period, a stock broker, James H. Price, had traded extensively in Airlift stock. On October 23, 1964, for reasons not pertinent here, he agreed to subject all of the stock which he then owned or thereafter acquired to a voting trust very similar to the 1963 Hewitt voting trust.

On April 20, 1960, Hewitt purchased one million shares of Airlift stock from Arthur Vining Davis and pledged the shares as security for the debt incurred in purchase. Hewitt defaulted, and in 1963, was sued by the executors of Davis, who had died in 1962. The case was settled on August 26, 1965, with the result that Hewitt not only received the one million shares, but also secured an option to purchase a second block of 704,274 shares of Airlift stock owned by the Davis estate.

Hewitt sold the one million shares to Price and, using Price's money, exercised the option on the remaining block of 704,274 shares. In this manner, both blocks of shares became subject to the Hewitt and Price voting trusts.

Price sold various portions of the 1,704,274 shares of Airlift stock to more than 60 individuals, including the plaintiff. Numerous conflicting claims developed, both by voting trustee and some of the transferees, resulting in suits against defendant in Florida, New Jersey, the District of Columbia, and this court.

The plaintiff purchased the 50,000 shares of the capital stock of Airlift International, Inc., which are the subjects of this suit, on September 16, 1965, from James H. Price at a price of $22,500.00, or $0.45 a share. He received five certificates, numbers 176048, 176049, 176050, 176051 and 176052, each for 10,000 shares.

Thereafter, during August, 1966, plaintiff submitted the shares to the Corporation Trust Company of New Jersey, the duly authorized transfer agent of the defendant corporation, with the request to register the transfer of shares to him. On August 23, 1966, the Corporation Trust Company responded to plaintiff's inquiry by letter, enclosing a letter addressed to it from defendant's attorney, Lipman Redman. Redman's letter stated, in pertinent part:

As you know from our prior correspondence, these five certificates, each in the amount of 10,000 shares, were sold by Dade & Co. to Robert M. Hewitt pursuant to an agreement between Mr. Hewitt and the Executors of the Estate of Arthur Vining Davis, of August 26, 1965. Airlift has taken the position that these shares are therefore all subject to the voting trust agreement of March 6, 1963, between Airlift, Mr. Hewitt and J. B. Franklin, president of Airlift. Accordingly, the company is willing to issue the stock in the names of Mr. Hewitt's transferees with the appropriate voting trust legend, to the extent that such transfers are in compliance with the said voting trust agreement.

On September 6, 1966, Redman, in a letter addressed to Dom H. Wyant, attorney for plaintiff, reiterated defendant's position on Airlift's refusal to register without restriction the shares in plaintiff's name.

On October 3, 1966, plaintiff applied for a "no action" letter from the Securities and Exchange Commission, which he

duly received. On November 8, 1966, plaintiff, by registered letter, informed defendant of this "no action" letter, and again demanded that the securities be registered in his name. He threatened suit within 20 days in the event that such registration was not made. On November 9, 1966, defendant requested a copy of the "no action" letter, and on November 14, 1966, plaintiff furnished it with a copy.

On January 20, 1967, plaintiff's complaint asked this court to direct defendant to register the shares in his name without restriction. It alleged that, on August 31, 1966, plaintiff attempted to sell the stock but was unable to do so because of the defendant's failure to register the transfer of said certificates in his name. At the time he tried to sell, the alleged sale price was approximately $4.00 per share, but, at the time of the complaint, it was only $3.00 per share. Therefore, he also asked for $50,000.00 in damages.

On February 15, 1967, defendant filed a declaratory judgment action in the Circuit Court for the Eleventh Judicial Circuit in and for Dade County, Florida. Airlift International, Inc. v. Price, et al. No. 67–2496 (unreported). That court was to determine the rights of 67 defendants, including Jack Berman, plaintiff here, to the 1,704,274 shares of defendant's stock, which had been impressed with the Hewitt and Price voting trusts.

On or about September 25, 1967, after filing a motion for partial summary judgment in this case, plaintiff filed a motion for summary judgment in the Florida case. Both motions requested the same relief, to-wit, that defendant be directed to transfer the shares to plaintiff, free of restriction.

On October 30, 1967, the Florida court granted plaintiff's motion for summary judgment, and, by its order of November 14, 1967, corrected a clerical error in the original judgment.

Registration of the stock certificates in plaintiff's name was duly made by the Corporation Trust Company, and the plaintiff sold the stock at the following prices on the following dates: 40,000 shares at 5¾ dollars per share on November 11, 1967, and 10,000 shares at 5⅞ dollars per share on November 22, 1967. For the total of 50,000 shares, this amounted to an aggregate sales price of $288,000.00.

On January 15, 1968, plaintiff amended his complaint, alleging as damages, $312,000.00, the difference between the price at which he *actually sold* his stock and the highest price at which he *could have sold* his stock, to-wit, a fair market value of $12.00 per share, or an aggregate sum of $600,000.00. He also asked for $6,914.37 in attorney's fees and expenses, plus costs.

The amended complaint stated that, during the period August 31, 1966, through November 14, 1967, the bid and asked price of the capital stock of Airlift International, Inc., reached a high of 12⅛ dollars bid and 12½ dollars asked. However, exhibits attached to plaintiff's own answers to defendant's interrogatories revealed that, until April 21, 1967, when these highs were reached for the first time, the stock did not enjoy such success. Both bid and asked prices were under 4 dollars per share during September, October and November, except on November 23, 1966, when it experienced a brief rise to 4 bid and 4½ asked. In December, it remained below 4, and continued until the latter part of January, when the high bid price on January 31, 1967, was 5½ dollars per share. It remained in the 4 and 5 dollar range during February. However, the price at which Berman ultimately disposed of his stock, in November, 1967, was not exceeded until February 28, when the asked price reached 6, and March 6, when the high bid price reached 5¹⁵⁄₁₆. *See* National Quotation Bureau's National Daily Quotation Service-Eastern Section, Issue-Airlift International, Inc. (Florida) Common Stock, submitted by plaintiff on September, 1967, as answer to defendant's interrogatory number 5.

Finally, the amended complaint alleged that defendant violated Section 1 of the Sherman Antitrust Act, in that it or its officers conspired with "others not known to plaintiff but well known to defendant" and acted in concert with them by unlawfully contracting, combining and conspiring to restrain interstate trade and commerce of the transfer and sale of Airlift stock. For this count, he asked treble damages as provided by Section 4 of the Clayton Act, and for reasonable attorney's fees and costs.

The court finds as fact the following:

(1) The plaintiff purchased the 50,000 shares of defendant's stock at a price of $22,500.00, or about $0.45 per share, on September 16, 1965.

(2) Plaintiff's cause of action, if any, against defendant for conversion of the 50,000 shares of stock, arose on August 13, 1966, on the initial refusal of the defendant to register the stock without restriction in the name of plaintiff.

(3) Notice to plaintiff of defendant's refusal was provided on or about August 23, 1966, the date of the Corporation Trust Company letter to plaintiff's attorney.

(4) The plaintiff sold the stock in two transactions, to-wit: (a) November 11, 1967, 40,000 shares at 5¾ dollars per share and (b) November 22, 1967, 10,000 shares at 5⅞ dollars per share; an aggregate sales price of $288,500.00.

(5) On or about August 31, 1966, as alleged in plaintiff's complaint, the sale price of the stock was at approximately $4.00 a share.

(6) On or about January 20, 1967, the time of plaintiff's complaint, the value of the shares had dropped to about $3.00 per share.

(7) At no time from August 13, 1966 to February 28, 1967, did the value of the stock rise above the 5¾ sales price, the lower of the two prices at which the stock was sold.

Three issues are presented for decision by the court: Damages, res judicata, and whether or not defendant is guilty of a violation of Section 1 of the Sherman Antitrust Act. Because of the court's decision that the plaintiff has not been damaged, under the law applicable at the time at which the cause of action arose, the court need not discuss whether defendant's conduct gave rise to any liability. In addition, the court may give summary treatment to the issues of res judicata, and the Sherman Act violation, both of which are controlled by the damages issue.

In this *Erie* diversity suit, the court must look to the law of the forum and its appropriate conflicts rule, to determine which law applies. According to the Uniform Commercial Code, which has been adopted in Georgia, Ga.Code Ann., Tit. 109A, the forum state, the rights and duties of the issuer of the security with respect to registration of transfer are governed by the law of the jurisdiction of the organization of the issuer, in this case, Florida. Ga.Code Ann. § 109A–8–106 (Supp.1968). Therefore, the court concludes that the law of Florida controls the case.

Considering defendant's allegation that plaintiff has suffered no loss, the court turns to the existing Florida law which would ordinarily govern the case, the Uniform Commercial Code, Fla.Stat., Title XXXVIII (hereinafter referred to as the Code). The Code became effective in Florida at 12:01 A.M. on January 1, 1967. It expressly applied to " * * * transactions entered into and events occurring after that date." Fla.Stat. § 680.10–101(1) (rev 1967), F.S.A. It further states, in pertinent part:

(2) transactions validly entered into before the effective date specified in this section and the rights, duties and interests flowing from them remain valid thereafter and may be terminated, completed, consummated or enforced as required or permitted by any * * * law amended or repealed by this code as though such repeal or amendment had not occurred.

Fla.Stat. § 680.10–101(2) (rev 1967), F.S.A. Because the plaintiff's cause of

action, if any, arose on August 13, 1966, before the effective date of the Code, the court must examine pre-Code Law to determine how the plaintiff's rights and interests flowing from this pre-Code transaction must be determined.

The Florida rule for the measure of damages for conversion of stock was stated in Scott v. National City Bank of Tampa, 107 Fla. 818, 146 So. 573 (Fla. Sup.Ct.1933), and reiterated in Klein v. Newburger, Loeb & Co., 151 So.2d 879, 880 (3d Fla.App.1963):

> * * * [W]e hold the Florida rule to be that in a case involving the conversion of corporate stock, damages are to be measured by the value of the stock within a reasonable time after the conversion.

*See also* Bache & Co. v. Lafcoe, 162 So. 2d 526, 527 (3d Fla.App.1964).

In the *Klein* case, the appellee stock broker erroneously sent, on May 7, 1959, to Klein, who had cancelled her account with appellee, 100 shares of stock, which it had purchased for $2,077.50. Klein thought the stock was in settlement of her account and sold it, on August 3, 1959, for $2,318.58. On or about June 7, 1960, appellee discovered its mistake and directed a letter to Klein requesting that she return the stock certificate. When no reply was received, appellee purchased on the open market 100 replacement shares for $5,800.00. The district court applied the so-called "New York rule", which provided that damages were to be assessed on the basis of the highest market price attained within a reasonable time *after the owner has had notice of conversion.* The appellate court reversed, rejecting the New York rule. Thus, appellee's summary judgment for $5,800.00 was reversed and remanded for the entry of a judgment in favor of the appellee based on the value of the stock within a reasonable time *after the time of its conversion* by appellant, to-wit: August 3, 1959.

In the *Scott* case, pledged stock was sold by the pledgee bank on February 7, at $18.00 a share. Some of the stock was sold elsewhere in February at $25.00 a share. Moreover, it was quoted in June at $40.00 and at $50.00 per share. The appellate court affirmed the trial court's order for a new trial, stating that the testimony as a whole failed to prove that the value of the stock within a reasonable time after the alleged February, 1928, conversion, was as much as $41.00 per share. 146 So. at 576.

In the instant case, during the period of time from August 13, 1966, when the alleged conversion occurred, to February 28, 1967, the stock never exceeded the price at which it was ultimately sold. This six and one-half month period, compared with the *Scott* 4 to 5 month period and the *Klein* 12 month period, both of which were rejected as overlong, was clearly a reasonable time within which the plaintiff might have chosen the highest stock price in order to determine his damages. Moreover, the *Klein* court's disposition was remanded for determination of the value *at the date of the conversion,* August 3, 1959. But, because the highest value of the stock within this reasonable time never exceeded the price at which he ultimately sold the stock, he has suffered no damage. Therefore, the motion for summary judgment must be granted for the defendant.

Considering briefly defendant's allegation that plaintiff's action is barred by the doctrine of res judicata, because of the Florida declaratory judgment which awarded it the transferred shares, the court notes that Florida has adopted rules substantially like the Federal Rules of Civil Procedure. Moreover, Fed.R.Civ.P. 13 and Florida's R.C.P. 1.170, 30 F.S.A. are, in pertinent part, identical. They provide that a compulsory counter-claim is not, in fact, compulsory if " * * * (1) at the time the action was commenced the claim was the subject of another pending action * * *." The plaintiff's suit in this court was pending at the time defendant's declaratory judgment action was pending in Florida. Therefore, to apply res judicata would fly in the face of Rule 13, thus defeating the purpose of the

rule to reward a diligent plaintiff by allowing him his choice of venue.

The court distinguishes the case of Johnson v. Airlift International, Inc., Civil No. 172540, decided December 11, 1968, by Judge Flynn of the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, on the ground that it did not involve a previously pending suit. Johnson received summary judgment in the Airlift declaratory judgment action, but filed his claim for damages at a later date. The court held that the subsequent suit was barred by the earlier final decree. Thus, the result in Johnson was consistent with Florida's R.C.P. 1.170, which would have required that plaintiff file his claim for damages as a counterclaim in the Florida action, had he not previously filed that claim in this court.

 Finally, Section 1 of the Sherman Antitrust Act provides relief only for one who has suffered damages. Because plaintiff has suffered none, his claim must fail. *See* Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 562, 51 S.Ct. 248, 75 L.Ed. 544, 548 (1931); Flintkote Company v. Lysfjord, 246 F.2d 368, 390 (9th Cir. 1957).

This is true notwithstanding the fact that plaintiff has proved no conspiracy involving the defendant of its officers with any separate entity. As the court said in Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911 (5th Cir. 1952), *cert. denied* 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953):

> It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation. * * * Plaintiff can come within the meaning of Section 1 of the [Sherman] Act only by claiming the existence of a conspiracy, but no conspiracy could possibly exist under the facts disclosed.

200 F.2d at 914. *See also* Marion County Co-op. Assn. v. Carnation Co., 114 F. Supp. 58, 63 (W.D.Ark.1953).

Here plaintiff has failed to prove a conspiracy. He has made no proof, but only allegations, which the whole facts of the case refute. His allegation that "others not known to plaintiff but well known to defendant" are involved in a conspiracy is insufficient. *See* Sperry Rand Corp. v. Nassau Research and Development Associates, 152 F.Supp. 91 (E.D.N.Y.1957). Therefore, in the absence of both proof of damages and proof of a conspiracy, plaintiff's Count 2 must fail.

For the reasons given, defendant's motion for summary judgment is granted.