111 N.J. Super. 461 (1970)
268 A.2d 548
ERIC C. BAYER, ET AL., PLAINTIFFS,
v.
AIRLIFT INTERNATIONAL, INC., ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided July 31, 1970.
*462 Mr. John W. Griggs and Mr. Richard J. Ryan for plaintiffs (Messrs. Morrison, Lloyd & Griggs).
*463 Mr. Adrian M. Unger for defendant Airlift International, Inc. (Messrs. Milton M. and Adrian M. Unger).
Mr. Charles H. Hoens, Jr. for defendant Corporation Trust Company (Messrs. Lum, Biunno & Tompkins).
LYNCH, J.S.C.
This is an action by a stockholder against a corporation, Airlift International, Inc. (Airlift), and its transfer agent, Corporation Trust Company (C.T.C.), for alleged wrongful refusal to transfer stock.[1] Originally plaintiff sought a mandatory injunction compelling the transfer, together with damages. During the course of this proceeding the stock was actually transferred to plaintiff and therefore plaintiff now merely seeks damages for the alleged wrongful refusal to transfer. In broad terms the alleged reason for refusal asserted by defendants is that the stock was subject to a "voting trust" and plaintiff refused to accept the transfer without the legend noting that restriction. The matter is before this court on remand from the Appellate Division pursuant to its opinion dated January 10, 1968.[2]
Defendants move for summary judgment on three grounds: 1) plaintiff's acceptance of transfer of his stock, subsequent to the alleged wrongful refusals to transfer, amounts to an "election" which bars this suit for damages; 2) assuming that the refusals to transfer were wrongful, nevertheless plaintiff has suffered no recoverable damages and 3) res judicata, based upon a Florida suit instituted by Airlift wherein plaintiff, though a named defendant therein, failed to counterclaim for the damages which he here seeks.
In urging ground No. 2 above, defendant Airlift adopts the tactics which proved successful for it in a comparable *464 case wherein a stockholder's request to transfer was refused for reasons similar to those asserted for the refusals here. Cf., Berman v. Airlift International, Inc., 302 F. Supp. 1203 (D.C.N.D. Ga. 1969). There the court granted Airlift's motion for summary judgment upon the ground that the plaintiff stockholder had suffered no damages.
The factual background is long and detailed. The Berman case recites its genesis at some length. For purposes of the issues here, the following facts suffice. On March 13, 1965, plaintiff acquired 150,000 shares of defendant Airlift for a purchase price of $61,500, or 41¢ per share. On December 15, 1965, he surrendered them for transfer but was refused because of the absence of the voting trust legend. On February 28, 1966, he sold the 150,000 shares, receiving in return the sum of $31,325 in cash and 37,000 shares of Airlift.
On July 14, 1966, plaintiff submitted the 37,000 shares for transfer and again transfer was refused because of the absence of the voting trust legend and plaintiff refused to accept any shares with the legend on them.
On December 24, 1965, plaintiff had instituted the within action seeking a mandatory action against defendants to compel transfer of the 150,000 shares without the voting trust legend and also for money damages by reason of the refusal to transfer as requested by him. After acquiring the 37,000 shares on February 28, 1966, plaintiff, on January 3, 1967, filed an amended complaint with respect to the refusal to transfer those shares in July 1966. On April 14, 1967, on plaintiff's motion for summary judgment, Judge Matthews ordered that the 37,000 shares be transferred to plaintiff free of restrictions. On April 19, 1967, plaintiff presented the shares to defendant C.T.C. for transfer. On April 20, 1967, the Appellate Division stayed the order of April 14, 1967, and defendants again refused transfer of the shares. On January 10, 1968, the Appellate Division reversed the April 14, 1967 order, holding in effect that there were factual and legal questions as to whether the *465 37,000 shares were properly subject to the voting trust at the time of the refusals to transfer.
On February 15, 1967, an action was started by defendant Airlift in the State of Florida for a declaratory judgment to establish the rights of 67 stockholders, including plaintiff Bayer, who held stock which was said to be subject to the voting trust. Bayer was named as a party defendant in that suit but apparently was not served and filed no pleadings therein. On October 3, 1967, an order was entered in the Florida action directing the transfer of the 37,000 shares to Bayer free and clear of any restrictions. Bayer and Airlift thereupon moved in the Appellate Division in this matter to vacate the restraint against transfer. The application was granted October 23, 1967, and the transfer to Bayer was made on that day. Bayer sold the 37,000 shares on October 24 and October 25, 1967, at approximately $6.25 per share, for a total gross price of $231,150.
After remand to this court defendants moved for summary judgment upon the three grounds stated at the outset of this opinion. Upon the argument of the motion, this court, conceiving that some factual issues as to the propriety of the refusal to transfer would probably survive the motion (R. 4:46-2) and wishing to reach the questions as to "election" and "damages" as urged by defendants, resolved that the motion for summary judgment should be renewed, but upon an assumption that all refusals to transfer the stock were actually wrongful. With that assumption the questions of "election" and "damages" are ripe for decision. The court therefore directed that testimony be taken on the issue of damages. Upon such proofs defendants were to renew their motion for judgment. Subsequently proofs were taken, defendants moved for judgment in their favor, and it is that motion which we are here deciding.
At the outset, plaintiff contended that the alleged wrongful refusal to transfer his stock occurred on three separate dates: a) December 15, 1965, with respect to the 150,000 shares *466 which he originally acquired; b) July 14, 1966, when transfer of the 37,000 shares was first refused and c) again upon submission for transfer of the same 37,000 shares on April 19, 1967, in and about the time of this court's previous order for summary judgment and its stay by the Appellate Division.
In response to plaintiff's reliance upon the dates of December 15, 1965, and July 14, 1966, defendants contended that, as of those dates, plaintiff suffered no damage, even assuming the wrongful refusals to transfer, because he ultimately received more for the shares than he might have received at either of those two times.[3] After some disputation of this assertion by plaintiff, at oral argument on May 8, 1970, he conceded that defendants' position was correct and no damages would flow to him, assuming a wrongful refusal to transfer on those dates.
Plaintiff now stipulates that the only date of alleged wrongful refusal to transfer upon which he relies is April 19, 1967. The stock was selling for approximately $10 per share on that date.
Defendants assert that any alleged wrongful refusal to transfer on April 19, 1967, cannot give rise to a cause of action for damages for the reason that the tort which plaintiff asserts against defendants is that of conversion, and that tort was "complete" on July 14, 1966, when the 37,000 shares were presented for transfer and it was first refused. Once having been completed on that day, say defendants, no new cause of action for another conversion of the same stock could arise on the subsequent date of April 19, 1967.
We shall consider seriatim defendants' three grounds upon which they urge a dismissal of the complaint.

*467 (A)

DEFENDANTS' ARGUMENT THAT PLAINTIFF'S ACCEPTANCE OF THE STOCK CONSTITUTED AN ELECTION BARRING DAMAGES.
In this respect defendants' argument is that in cases involving a wrongful refusal to transfer the stockholder is confronted with an election, i.e., he may either accept the stock or sue for damages in conversion and recover the value of the stock, but he may not get the stock and "damages" as well. They rely heavily upon Siegel v. Riverside Box & Lumber Co., 89 N.J.L. 595 (E. & A. 1916) and Virginia Public Service Co. v. Steindler, 166 Va. 686, 187 S.E. 353 (1936). Defendants' reliance upon Siegel is misplaced.
The court said, 89 N.J.L. at p. 596:
The rule of damages in cases of this kind depends on the nature of the action. If the plaintiff claims special damages only and seeks to retain the stock, it would obviously be wrong to allow him to recover the value of the stock and retain the title too. If, however, the plaintiff claims for a conversion of the stock, so that upon payment of a judgment in the action the title would pass to the judgment debtor (2 Kent Com. (12th ed., note 1) 388; Singer Manufacturing Co. v. Skillman, 52 N.J.L. 263; Bauer v. Hess, 76 N.J.L. 257), he may recover its value. (Emphasis added).
Defendants misread Siegel. It was not a case, such as here, where plaintiff obtained the stock and then sued for special damages. Rather the plaintiff sued for the value of the stock. It is perfectly logical that, in that context, the plaintiff is not entitled to both the value of the stock and the stock itself. While defendants cite the case for the proposition that the special damages here sought are barred by reason of the Siegel decision that case is cited in 12 Fletcher, Cyclopedia of Corporations, § 5523, p. 572, n. 93 (1957), for the proposition that: "And it has been held that instead of suing as for a conversion he may elect to retain *468 the stock and sue for special damages only." That is what plaintiff seeks here.
Since plaintiff here is not suing for the value of the stock Siegel is no bar to his recovery of special damages.
As to plaintiff's reliance upon Virginia Public Service Co. v. Steindler, 166 Va. 686, 187 S.E. 353 (1936), I do not find that case persuasive. First, insofar as it appears to reject the so-called "New York rule," (see infra) it does not conform to New Jersey law as applied in Durant v. Block, 113 N.J.L. 509 (E. & A. 1934) and implicitly approved in Dimock v. United States Nat. Bank, 55 N.J.L. 296, at 303, 304 (E. & A. 1893). Second, the opinion is somewhat confusing; it cites its prior decision in the same case, reported as Steindler et al. v. Virginia Public Service Co., 163 Va. 462, 175 S.E. 888 (1934), for the proposition that when a stockholder seeks to compel transfer of his stock which the corporation has wrongfully refused to transfer he is seeking specific performance, and "a court of equity will give him this relief * * * and such damages as he has suffered by reason of the corporation's refusal to promptly comply with his demands * * *." (Emphasis added). (187 S.E. at 356). Third, if the second Steindler opinion is said to be authority for rejection of the "New York rule" then this court has some difficulty in reconciling the later opinion of the same Supreme Court of Appeals of Virginia in Morison v. Dominion Nat. Bank of Bristol, 172 Va. 293, 1 S.E.2d 292 (1939), wherein the court said, in reciting the New York rule:
The correct rule, and the one enforced by this court for more than a quarter of a century, is to ascertain the highest market value of stock unlawfully converted by a pledgee between the date of conversion and a reasonable time after the owner has received notice of it. Miller & Co. v. Lyons, 113 Va. 275, 74 S.E. 194; Virginia Public Service Co. v. Steindler, 166 Va. 686, 187 S.E. 353, 105 A.L.R. 1413. After this highest intermediate value within the time stated is determined, credit is given as of the date of conversion. (Emphasis added). (at 293).
*469 Fourth, Steindler appears to stand for the proposition that even though one has actually lost profits by reason of a wrongful refusal to transfer his stock, he cannot recover that loss. This does not comport with fundamental concepts of damages. It does not make whole the party who has been wronged and it runs counter to the better reasoned authorities.
The measure of damages is stated in Restatement of Torts, § 927, p. 647 (1939):
§ 927. Conversion or Destruction of a thing or of a legally protected interest therein.
Where a person is entitled to a judgment for the conversion of a chattel or the destruction of any legally protected interest in land or other thing, the damages include.
(a) the exchange value of the subject matter or the plaintiff's interest therein at the time and place of the conversion or destruction, or a different value where that is necessary to give just compensation, and

(b) the amount of any further loss suffered as the result of the deprivation, and
(c) interest from the time at which the value is fixed or compensation for the loss of use. (Emphasis added).
See, infra, Comment e as to commodities which fluctuate in value.
Obviously, the purported effect of the second Steindler decision would deny the relief afforded under clause (b) of said rule, for it would deny recovery for any loss of profits caused by a wrongful refusal to transfer.
For these reasons, I do not consider that Virginia Public Service Co. v. Steindler, supra, should be followed here.
I therefore conclude that by accepting transfer of the subject stock on October 23, 1967, plaintiff is not precluded from seeking damages for defendants' prior alleged wrongful refusals. If plaintiff can prove damages according to the proper measure thereof, he may recover them. Defendants' ground (a) is therefore rejected as a basis for summary judgment in their favor.

*470 (B)

HAS PLAINTIFF SUFFERED RECOVERABLE DAMAGES?
There are several different approaches to the question of the measure of damages in the case of wrongful refusal to transfer stock. Cf., Dimock v. United States Nat. Bank, supra, 55 N.J.L. at 303, 304; Annot., "Remedy for refusal of corporation or its agent to register or effectuate transfer of stock." 22 A.L.R.2d 12, § 15. Some apply the value of the property at the time of the conversion as the measure of damages. In Markham v. Jaudon, 41 N.Y. 235, it was held that the measure of damages was the highest market price between the time of conversion and the trial. But Markham was subsequently overruled by the Court of Appeals and there was established what has become known as the "New York rule," i.e., that the highest intermediate value between the time of the conversion and a reasonable time after the owner has received notice of it is the measure of damages. Cf., Dimock, supra, 55 N.J.L. at 303. For our purposes it is helpful to understand the rationale of the New York rule:
The principle upon which this doctrine rests is the consideration that the general rule that, in an action for a conversion, the market value of the property at the time of the conversion would afford an inadequate remedy, or rather no remedy at all, for the real injury, which consisted in the wrongful sale of property of a fluctuating value at an unfavorable time, chosen by the broker himself. Hence, the cost of replacing the securities by a purchase in the market, allowing a reasonable time for that purpose, has been regarded as the proper measure of damages. As was said by Mr. Justice Bradley in Galigher v. Jones, 129 U.S. 193, 9 S.Ct. 335, 32 L.Ed. 658: `A reasonable time after the wrongful act complained of is to be allowed to the party injured to place himself in the position he would have been in had not his rights been invaded.' * * * In New York, and in most of the sister states, as well as in the supreme court of the United States, the formula which has been called the New York rule has been adopted, and is the rule which will accomplish the most complete justice in the ordinary transactions between the broker and his customer dealing in stocks when an unauthorized sale is the act of conversion [55 N.J.L. at 304]
*471 In Durant v. Block, supra, the New York rule was applied and two trading days was held to be a reasonable time within which the stockholder could determine the course he wished to take with respect to his stock.
The New York rule has since gained wide support in view of its fairness in cases in which mere value at the time of the conversion is insufficient, due to the fluctuating value of the property involved, to do justice to the aggrieved party. See, Durant v. Block, supra; Gervis v. Kay, 294 Pa. 518, 144 A. 529 (1928); B.L. Blair Company v. Rose, 26 Ind. App. 487, 60 N.E. 10 (1901); Wyndham, Inc. v. Wilmington Trust Co., 5 Del. Super. 324, 59 A.2d 456 (Del. 1948). In Restatement of Torts, § 927, p. 650, Comment e (1939), it is said that:
* * * if the subject matter of the conversion is a commodity which has fluctuated in value, the owner is entitled to the highest value which it reached in the market within a reasonable time after he discovered or had reason to know of the conversion. This is an equitable adjustment based on what it would have cost the deprived owner to purchase an equivalent amount of the commodity at such time and thereby avoid loss or retain a profit. (Emphasis added).
It is presumably because he recognizes that an application of the New York rule in this case would afford him no damages for the conversions of December 15, 1965, and July 14, 1966, that plaintiff now concedes that he is not entitled to damages for the refusals to transfer on those dates. Thus as of December 15, 1965, the average bid price for the stock was $1.69 per share, which would have produced a gross sale price of $62,530 for 37,000 shares as against Bayer's ultimate sale for a total sum on October 24 and October 25, 1967, for a gross sum of $231,150, an average price of approximately $6.25 per share. On July 13, 1966, the highest asked price was 4 1/8 and on July 14, it was 4. If we were to take the highest asked figure of 4 1/8 on July 13, 1966, Bayer would have received $152,625. Therefore, since he ultimately sold the stock at a considerably *472 higher return than was possible on either of the first two "conversion" dates, he suffered no loss. Needless to say, at the hearing before this court on the instant motion there were no proofs on plaintiff's behalf that he could have sold the 37,000 shares at the date of either conversion, or within a reasonable time thereafter, at any figure approaching that for which he ultimately sold the stock.
It is in this context that plaintiff now asserts that he rests his claim for damages upon the refusal to transfer on April 19, 1967, when the stock sold for approximately $10 per share. Defendants reject this contention, first, upon the principle that, the conversion of the 37,000 shares having occurred on July 13, 1966, it was complete as of that date and any subsequent demands and refusals, specifically April 19, 1967, cannot create a new tort.
Most cases discussing the proposition as to whether or not multiple conversions can occur do so in the context of determining when the statute of limitations begins to run. It is the general rule that the person deprived by the conversion cannot delay the operation of the statute by making repeated demands. Weiss v. Stelling, 130 N.J.L. 235 (E. & A. 1943). See also Restatement of Torts, § 899, p. 526, Comment c (1939), where it is said that: "A cause of action for the conversion of chattels is complete when the chattel is first tortiously taken or retained by the defendant; the person deprived cannot delay the operation of the statute by making repeated demands." (Emphasis added). While the foregoing refers to "chattels" no reason is suggested why the rule should be any different with respect to conversion of stock.
When one applies the rationale of the New York rule of damages the soundness of the proposition that there should be no recovery for the alleged wrongful refusal to transfer plaintiff's shares on April 19, 1967, becomes apparent. As said above that rule is based upon an "equitable adjustment" based on what it would have cost the deprived owner to go into the market and purchase stock equivalent *473 to that of which he had been deprived by the wrongful refusal to transfer. So here, if Bayer had on July 14, 1966, or within a reasonable time thereafter, gone into the market and purchased 37,000 shares at the then current price, i.e., for an approximate total purchase price of $152,625, and if he had chosen to keep it until April 19, 1967, he would have been the beneficiary of its increase in value on the April date in the approximate total amount of $374,625. He would in no way have been harmed.
The New York rule is one of fairness. The reason why the prior rule (that the measure of damages was the highest value between the time of the conversion and the time of trial) was rejected was because it would be "unjust to allow (a stockholder) to recover the highest value of the stock at any time up to the time of trial no matter how great the interval between the conversion and the trial." 22 A.L.R.2d 68. As was said in Galigher v. Jones, 129 U.S. 193, 9 S.Ct. 335, 32 L.Ed. 658 (1889), in discussing the New York rule:
* * * the hardship which arose from estimating the damages by the highest price up to the time of trial, which might be years after the transaction occurred, was often so great that the court of appeals of New York was constrained to introduce a material modification in the form of the rule, and to hold the true and just measure of damages in these cases to be the highest intermediate value of the stock between the time of its conversion and a reasonable time after the owner has received notice of it to enable him to replace the stock. (at 201, 9 S.Ct. at 338).
Here plaintiff's cause of action was complete on July 14, 1966, when the stock was selling for about $4 per share. He waited for approximately nine months thereafter and resubmitted the stock for transfer when it was selling for about $10 per share. If he were permitted a measure of damages based upon the latter refusal the corporate "wrongdoer" would be paying for damages which plaintiff could have avoided in July 1966, by acquiring other stock in the market at that time. The corporation would be at the *474 mercy of the plaintiff's choice of the highest market in the intervening period and the plaintiff would bear none of the risks which are inherent in the stock market. As was said in Pinkerton v. Manchester & Lawrence R. Co., 42 N.H. 424 (1861):
* * * it may be fairly assumed that a very large portion of the stocks purchased are purchased to be sold soon; and to give the purchaser, in case of a failure to deliver such stock, the right to elect their value at any time before trial, which might often be several years, would be giving him not indemnity merely but a power, in many instances, of unjust extortion.
This is what we have in the case at bar. Combining the New York rule of measure of damages with the proposition that the tort is complete upon demand and refusal, the result here is that the plaintiff, upon the conversion in July 1966, could, within a reasonable time, have purchased an equal quantity of shares and thereby fixed his damages. Holding that stock until April 1967, when the stock reached 10, plaintiff could have then, if he so chose, sold his shares and have had the profit he now seeks from this court. But to permit him to take advantage of whatever high point in the market he chose, e.g., April 1967, would give him not indemnity but more than he lost, and to that extent compel an extortion against the corporate defendant.
One conceivable argument against application of the New York rule in this case is that, perhaps, within a reasonable time after the conversion of July 1966, he might not have had the money to go out into the market and to purchase an equal 37,000 shares, an opportunity which that rule imputes to him. But his financial inability to make that purchase, if such were the fact, is not an element to be considered. Ling v. Malcom, 77 Conn. 517, 59 A. 698, 699 at 702 (1905). In any event, if it were to be considered, it does not counterbalance other equitable considerations which support the New York rule nor the postulate that the April 1967 refusal did not create a new tort.
*475 One other point raised by plaintiff should be disposed of at this time. It is plaintiff's contention that he obtained a "no action" letter between July 1966 and April 1967, and that therefore the refusal to transfer on the latter date constitutes a new conversion. In the first place, the Appellate Division held herein that the kind of "no action" letter which he received was not that kind which was referred to in the voting trust agreement and which would free the stock of the voting trust impediment. Second, in the light of the legal principles set forth above the acquisition of a "no action" letter is irrelevant. If the plaintiff had done what the New York rule envisioned, i.e., purchased the stock in the open market after the conversion then, with or without the "no action" letter, he would have had the same number of shares to sell in April 1967, as he would have if there had been no conversion.
For these reasons, I find that the conversion was complete in July 1966, and any demand in April 1967, did not create a new tort. Plaintiff's damages can only be measured by reference to a reasonable time after the July 1966 conversion. Since he has abandoned any claim for damages based upon it, and has offered no proof that the stock could have been sold within a reasonable time thereafter at a price higher than that at which it was ultimately sold, defendants' motion should be granted. Berman v. Airlift International, Inc., supra.

(C)

IS THE FLORIDA JUDGMENT RES JUDICATA SO AS TO BAR PLAINTIFF'S SUIT FOR DAMAGES HERE?
Since we have decided that defendants' motion for summary judgment should be granted on the ground last discussed, there is no necessity to consider the further ground of res judicata. However, in the interest of complete consideration of defendants' contentions, brief attention will be paid to it.
*476 It is said that plaintiff is barred from seeking damages here because he was a named defendant in the Florida action and failed to counterclaim for the damages which he here seeks though he had the opportunity to do so.
In the first place, while Bayer was a named defendant in the Florida case, he was not served. Therefore a question as to jurisdiction over him in the Florida court raises an issue of fact.
Second, the Florida action was not commenced until after this suit was begun here. The issue of damages was never raised and Bayer did not counterclaim therefor. Florida procedure, as stated in Berman v. Airlift International, supra, is that a * * * compulsory counterclaim is not, in fact, compulsory if `* * * (1) at the time the action was commenced the claim was the subject of another pending action * * *'. 302 F. Supp. at 1207. For that reason, the plea of res judicata was denied in Berman. Likewise here, for at the time the Florida action was commenced the claim for damages was already the subject of this action.

CONCLUSION
For the reasons set forth in (b) above, defendants' motion for summary judgment is granted. Submit judgment pursuant to Rule 4:42-1. No costs.
NOTES
[1] Though there are two named plaintiffs herein, the claim of plaintiff Robert C. Hewitt is moot. We are therefore concerned only with the claim of plaintiff Eric C. Bayer (Bayer), who will be referred to herein as "plaintiff."
[2] Bayer, et al. v. Airlift International, &c. (A-894-66).
[3] On December 15, 1965, the stock was quoted at 1 5/8 to 1 1/2 bid, and asked prices ranged from 1 7/8 to 1 5/8. On July 14, 1966, bid prices ranged from 3 7/8 to 3 13/16 and asked prices from 4 1/8 to 3 15/16. Bayer sold the shares on October 24 and 25, 1967, at an average price per share of 6 1/4.