**W. Henry duPONT, Plaintiff,**

**v.**

**DELAWARE TRUST COMPANY, a Delaware Corporation, and Hopeton Holding Corporation, a Delaware Corporation, Defendants.**

**Jean Ellen duPont McConnell et al., Intervenor-Defendants.**

Court of Chancery of Delaware,
New Castle.

Submitted Sept. 25, 1975.

Decided Dec. 24, 1975.

Resubmitted June 3, 1976.

On Reargument Sept. 30, 1976.

Russell J. Willard, Jr., Wilmington, and Marvin Comisky, Morris L. Weisberg and Alan C. Gershenson, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for plaintiff.

William S. Potter, Charles S. Crompton, Jr., and Michael D. Goldman, Potter, Anderson & Corroon, Wilmington for defendants Delaware Trust Co. and Hopeton Holding Corp. and for intervening defendants, Jean Ellen duPont McConnell, Evelyn duPont Donaldson, John E. duPont, and William duPont, III.

V. R. Shackleford, Jr., Orange, Va., for intervening defendant Marion duPont Scott.

MARVEL, Vice Chancellor.

In February, 1970, plaintiff[1] as one of the five grandchildren remaindermen entitled to receive sixty percent of the corpus of a trust consisting of the rest, residue and remainder of the estate of their grandfather, William duPont, upon the death of their father, William duPont, Jr.,[2] the principal life beneficiary in sixty percent of the income of such trust, received[3] from the defendant trustee, Delaware Trust Company, as a part of a purported distribution of his one fifth interest in sixty percent of the corpus of such trust, 699 shares of Hopeton Holding Corporation common stock, constituting a one fifth interest in sixty percent of the 5,825 outstanding shares of common stock of Hopeton Holding Corporation which had been received by the trustee in exchange for the same number of shares[4] of Delaware Trust Company common stock upon the death of William duPont in 1928.

Upon the death of his father, William duPont, Jr., as noted above, became the life beneficiary in sixty percent of the income of his father's trust estate not necessary to pay any part of six prior lifetime annuities provided for by the testator, his sister, Marion, having been granted a life estate in forty percent of the income derived from the corpus of such trust not necessary to pay any part of the aforesaid prior six annuities.

The trust in question continued to be administered pursuant to such testamentary directions until the death of William duPont, Jr., on December 31, 1965. From and after such date, each of the remaindermen here involved, including plaintiff, became entitled to and received his or her one fifth interest in the dividends declared and paid by Delaware Trust Company on its corresponding number of common stock, payments which they continued to receive pending the ultimate dissolution of Hopeton Holding Corporation and the receipt of their stipulated Delaware Trust Company shares.

Meanwhile, however, plaintiff having become concerned about having received shares of common stock of Hopeton Trust Company rather than shares of common stock of Delaware Trust Company upon his father's death, filed this action on August 2, 1972 in which he sought the issuance to him of a one fifth interest in the 3,495 issued and outstanding shares of common stock of Delaware Trust Company placed in trust under the will of the late William duPont for the lifetime of his son, William duPont, Jr., upon plaintiff's surrender of the shares of common stock of Hopeton Holding Corporation which had been distributed to him in February, 1970 in lieu of a corresponding number of shares of Delaware Trust Company. Such complaint alleged that:

"* * * By willfully permitting the exchange of the valuable estate assets (Delaware Trust Company common stock) for the common stock of Hopeton, which is much less valuable because it is non-voting stock, Delaware Trust Company willfully breached its fiduciary responsibility to the intended beneficiaries of William duPont, Sr.'s last will and testament * * *",

and went on to complain that:

"* * * The non-voting common stock of Hopeton is not readily marketable and is much less valuable than the voting stock of DELAWARE TRUST COMPANY, since the holders of the voting preferred of Hopeton can, among other things, at their pleasure choose to

1. Plaintiff's name is now Henry Irénée Eleuthere duPont.

2. Such life tenant died on December 31, 1965.

3. Defendants have withdrawn their affirmative defenses of laches, the applicable statute of limitations, release, ratification and acquiescence.

4. Now 116,500 shares by reason of stock splits accomplished in 1942 and 1962.

distribute to the common shareholders nothing * * *"

Thereafter, on September 2, 1973, on the parties' cross motions for summary judgment, this Court decided that the 1928 exchange of shares of stock of Hopeton Holding Corporation [5] for shares of Delaware Trust Company, in light of the then requirements of 8 Del.C. § 160, and other applicable law, was proper under the material undisputed facts and circumstances of the case and granted judgment [6] to the defendants.

On April 17, 1974, however, the Supreme Court of Delaware reversed [7] the judgment of this Court, the appellate court being of the opinion that little or insufficient consideration had been given by the trial judge to the interests of the grandchildren entitled to the remainder of the estate of their grandfather. The case was accordingly remanded to this Court for further proceedings designed to determine how the rights of the remainderman under the will of William duPont in the corpus of such estate could best be restored, the Court stating in its denial of defendants' motion for reargument.

"As we noted in our principal decision, the ultimate remedy to restore the rights of the remaindermen must be furnished by the Vice Chancellor. The nullification of the Hopeton exchange is not necessarily a condition of that restoration although such a procedure might be required."

However, on remand, further proceedings in this Court designed to restore the rights of the remaindermen under the will of their grandfather, William duPont, which had been found to have been adversely affected by the exchange of shares between Hopeton Holding Corporation and Delaware Trust Company, was not held, the parties having on October 30, 1974, filed a joint petition for which Court approval was sought and obtained through the entry of an order of even date directing the distribution to the five grandchildren of William duPont of their aliquot interest in sixty percent of the common shares of Delaware Trust Company which had been placed in trust for the lifetime of their father with remainder over to them in equal shares in exchange for their shares of Hopeton Holding Corporation stock. As a result of such petition a conditional distribution to each such grandchild was agreed to be made of a one fifth interest in sixty percent of the 116,500 shares of Delaware Trust Company which had been held by Hopeton Holding Corporation during the lifetime of William duPont, Jr., consisting of 13,980 shares to each such grandchild. In addition, it was agreed that a one fifth interest in sixty percent of 18,100 shares of Delaware Trust Company stock bequeathed to Hopeton Holding Corporation by William duPont, Jr., would also be made, namely 2,172 shares to each such grandchild. Furthermore, such petition provided that the forty percent of the 116,500 shares of Delaware Trust Company being held by Hopeton Holding Corporation during the lifetime of Marion duPont Scott as a result of the 1928 exchange as well as forty percent of the 18,100 shares of Delaware Trust Company bequeathed to Hopeton Holding Corporation by her brother would be held by Delaware Trust Company rather than Hopeton Holding Corporation during the lifetime of Marion duPont Scott subject to the provisions of her father's will. Also conditionally provided for was the dissolution of Hopeton Holding Corporation as well as the 1954 inter vivos trust. The effectuation of all of the above undertakings was made contingent upon the obtaining of a ruling from the Internal Revenue Service

5. In their answer defendants allege that the market value of the 699 shares of Hopeton Holding Corporation turned over to plaintiff in February, 1970, as of December 31, 1965, was $1,425,910.

6. duPont v. Delaware Trust Company et al., Del.Ch., 310 A.2d 915 (1973)).

7. duPont v. Delaware Trust Company, et al., Del.Supr., 320 A.2d 694 (1974).

of the United States that such transfers or distributions of securities would, if carried out, be free of federal taxation, and such approval was granted on March 6, 1975.

This case having been filed for the purpose of establishing for plaintiff his claim to voting rights in one fifth of the shares of Delaware Trust Company common stock contained in sixty percent of the rest, residue and remainder of the estate of his grandfather, William duPont, has therefore as a result of a petition of the parties hereto dated October 30, 1974, implemented by the Court's order of the same date, become moot inasmuch as plaintiff by the terms of such order not only was conditionally assured the granting of voting rights in his distributable share of common stock of Delaware Trust Company originally held in the trust estate of his grandfather but was also conditionally assured the additional right to have the very shares themselves registered in his name. Said order of October 30, 1974 contained a proviso, however, to the effect that:

> "Plaintiff and his counsel shall have the right to apply to the Court for an award of (a) attorneys' fees, costs and out-of-pocket disbursements arising from this litigation; and (b) monetary damages alleged to have been suffered by plaintiff; and defendants shall have the right to oppose any such applications."

Thus, it is in such area alone that this Court is required to act at this stage of this litigation, namely on plaintiff's application for an award of damages and costs allegedly attributable to the failure of plaintiff to receive his proper allocation of Delaware Trust Company common stock on his father's death as well as for an award of an appropriate fee to his counsel based on the accepted factors deemed appropriate. Such applications are opposed, at least in part, by the defendants Delaware Trust Company and Hopeton Holding Corporation.

■ While the Supreme Court of Delaware did not direct nullification of the Hopeton exchange, yet that is what has transpired as a result of the entry on the parties' application followed by the order of October 30, 1974 granting relief to plaintiff over and above that contemplated as possibly adequate by the Supreme Court of Delaware on remand, by providing for the dissolution of Hopeton Holding Corporation and the distribution of Delaware Trust Company common stock to the remaindermen in appropriate amounts. There would thus appear to be no doubt on the present record but that the defendant Delaware Trust Company failed to live up to its fiduciary duty as a testamentary trustee insofar as the established property rights of plaintiff in the remainder of the estate of his grandfather, William duPont, are concerned, and that the 1928 exchange of the voting common shares of Delaware Trust Company for non-voting Hopeton shares accordingly constituted a conversion of plaintiff's rights to property. As a result, plaintiff, in my opinion, is entitled to an award of damages resulting from his failure to receive shares of common stock of Delaware Trust Company within a reasonable time after his father's death and not merely what he has been ordered to receive, namely his aliquot number of shares of Delaware Trust Company common stock, Restatement of Torts, § 927, giving credit, of course, for the value of the shares of common stock of Hopeton Holding Corporation delivered to plaintiff in lieu of common shares of Delaware Trust Company. I am accordingly of the opinion that this being a case of an established breach of fiduciary duty that defendants' cases having to do with the relief normally granted upon the rescission of contracts are not in point. In other words, I am satisfied that while the rationale of *Bayer v. Airlift International, Inc.,* 111 N. J.Super. 461, 268 A.2d 548 (1970) is dictum, it is persuasive here. See also *George v. Coolidge Bank and Trust Co.*

(Sup. Judicial Ct. of Mass.), 360 Mass. 635, 277 N.E.2d 278 (1971). Both cases comport with contemporary concepts of the appropriate relief to be granted upon the establishment of an act of conversion. I am also of the view that the rationale of *Virginia Public Service Co. v. Steindler,* 166 Va. 686, 187 S.E. 353 (1936) which puts the burden of a possible loss in the value of converted securities on the injured party, does not comport with logical concepts of damages. Compare *Wyndham v. Wilmington Trust Company,* 5 Del.Super. 324, 53 A.2d 456 (1948), and *Cahall v. Burbage,* 14 Del.Ch. 55, 121 A. 646 (1923).

I accordingly conclude that plaintiff is entitled not only to such damages as may be attributable to his being deprived of voting rights in his aliquot number of common shares of stock of Delaware Trust Company, which would have presumably been delivered to him upon the death of his father on December 31, 1965 had there been no Hopeton exchange but also to the highest value of the shares of common stock of Delaware Trust Company, which, according to the stipulation and order of October 30, 1974, he should have received following his father's death, from the time of their conversion up to a reasonable time after he acquired knowledge of such conversion, the risk of fluctuations in the value of converted stock being properly borne by the wrongdoer, *Wyndham v. Wilmington Trust Co.* supra. Such damages must, however, be diminished by the value of the Hopeton Holding Corporation common shares delivered to plaintiff after his father's death even though the difficulty in attempting to measure the value of Hopeton Holding Corporation non-voting common stock as compared to Delaware Trust Company voting stock is so manifest " * * * as to discourage the atempt."[8]

And while plaintiff contends that the shares of common stock of Hopeton Holding Corporation delivered to plaintiff in February, 1970 were valueless and that the measure for his damages should accordingly be the difference between the value of Delaware Trust Company stock on October 30, 1974, the date of the agreement under the terms of which defendant Delaware Trust Company recognized plaintiff's rights as a beneficiary entitled to Delaware Trust Company stock, namely $65 per share, and the highest intermediate price of such stock between such date and the alleged date of conversion, namely December 31, 1965, such price being $135 per share, I am not persuaded that shares of common stock of Hopeton Holding Corporation were entirely without value at the times here relevant. Plaintiff contends, in the alternative, that assuming that the shares of common stock of Hopeton had some value in the hands of plaintiff, it was incumbent on the defendants Delaware Trust.Company and Hopeton Holding Corporation to establish such value at the April, 1975 hearing, and that they failed to do so.

I do not believe, however, that the interests of justice call for the entry of a default judgment, as it were. I now believe that both sides as well as the Court in this important litigation failed properly to come to grips with the pending issues of damages, costs and attorneys' fees at the hearing of April 3, 1975, which was basically unproductive in that the evidence adduced as to the value of Delaware Trust Company common stock as well as of common stock of Hopeton Holding Corporation demonstrated a thin over the counter market for the former and none for the latter. In short, the parties to this bitter litigation have, I believe, failed to face up to the basic realities of the issues presented particularly that of the basic value of Hopeton Holding Corporation common stock, and I am of the opinion that it would constitute a miscarriage of justice to base plaintiff's claim for damages on the proposition that Hopeton Holding Corporation common stock had no value whatsoever at the times here relevant.

8. *duPont v. Delaware Trust Company, et al.,* Del.Supr., 320 A.2d 694, at 699 (1974).

■ Accordingly, while I am prepared to allow plaintiff a fee for his attorneys based essentially on the time devoted· to this case viewed in the light of the skills disclosed, the results achieved, and other factors properly to be considered on such an application (compare *Wilmington Trust Company v. Coulter*, Del.Ch., 208 A.2d 677 (1965), I decline to consider plaintiff's application for an award of damages for himself or for additional counsel fees for his attorneys based on his estimate of such damages until I am satisfied of the precise amount of such damages. Pending a determination of the precise monetary difference between the basic value of Delaware Trust Company common voting stock and that of Hopeton common non-voting stock at the times here relevant viewed in the light of the intra-family interests here involved after a futher hearing, decision will also be reserved on plaintiff's further application for counsel fees based on the alleged recovery by the other remaindermen of the full value of their Delaware Trust Company stock, each of such remaindermen having been represented by other counsel in this litigation and the restored rights of whom in over the counter voting stock of Delaware Trust Company having not been precisely evaluated.

On notice, an appropriate form of order designed to carry out the above may be presented.

## ON REARGUMENT

MARVEL, Chancellor:

Although the main thrust of the complaint herein as well as of the April 16, 1974[1] opinion of the Supreme Court of Delaware (the mandate of which directed the reversal of. the order of this Court which because of the exigencies of the problems brought about by the death of William duPont in 1928, viewed in the light of the then stricture on the right of a bank to vote its own shares, had upheld the validity of the so-called Hopeton exchange) essentially had to do with the restoration to plaintiff of his voting rights in his aliquot share of Delaware Trust Company stock of which he had been deprived on his father's death as a result of such exchange, the principal prayer of the complaint, apart from one for the removal of Delaware Trust Company as trustee " * * * for a deliberate and willful violation of its duties * * *", was that an order be entered directing that:

> " * * * defendants deliver to plaintiff such number of shares of Delaware Trust Company as he is entitled to receive under the Will of William duPont, Sr. upon the surrender by plaintiff of the shares of non-voting stock of Hopeton which were distributed to him in February, 1970."

And as matters have transpired, this is the relief accorded plaintiff as well as the intervening individual defendants as a result of the implementation of the order entered by this Court on October 30, 1974, which by its terms did away with the task assigned to this Court by the Supreme Court of Delaware, namely that of fashioning the relief necessary to restore to plaintiff full rights in the shares of stock of the Delaware Trust Company bequeathed to him under the provisions of his grandfather's will and went on to resolve and settle with the consent of all parties " * * * all of the issues presented * * * except for damages, and fees and costs."

Defendants now ask the Court to emasculate the force and effect of such October 30, 1974 order, likening it to an order approving settlement of a claim made in a stockholders' derivative action, in which, without conceding liability to a defendant corporation and its stockholders for damages allegedly resulting from action or nonaction on the part of those charged with wrongdoing, such accused agree to make "restitution" of some sort to their corporation.

1. Reargument denied May 13, 1974.

However, I do not view the stipulation and order here in issue to constitute a settlement of an unproved claim but rather as constituting a clear consent to the granting of the full relief which could conceivably have been gained by plaintiff after trial, short of the removal of the defendant Delaware Trust Company as trustee. In other words:

"In the absence of fraud, mistake, or collusion, a judgment by consent is binding and conclusive upon the parties and those in privity with them, to the same extent as judgments rendered upon controverted facts and due consideration thereof upon a contested trial," 47 Am. Jur.2d Judgments § 1089 (footnotes eliminated).

I decline to rescind or alter my December 24, 1975 opinion herein and on notice a form of order in conformity with such opinion and with this opinion on reargument may be submitted.