[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 23, 2010
JOHN LEY
CLERK

_____

No. 09-13608
Non-Argument Calendar
_____

D. C. Docket No. 06-80525-CV-DTKH

NEIL COLE,

Plaintiff-Appellee,

versus

AMERICAN CAPITAL PARTNERS
LIMITED, INC., et al.,

Defendants,

C. FRANK SPEIGHT,
JOSEPH I. EMAS,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 23, 2010)

Before CARNES, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

This appeal concerns the appropriate calculation of damages. Defendant-Appellant Frank Speight challenges the district court's calculation and imposition of $6,595,412.15 in damages after entry of summary judgment in favor of Plaintiff-Appellee Neil Cole in a suit alleging fraud, conversion, breach of contract, breach of fiduciary duty, and conspiracy.

I.

The facts, in short, are as follows: In various capacities, the defendants facilitated a "Stock Loan" to Cole. In a Stock Loan, the borrower pledges stock as collateral for loan monies. Cole engaged in two separate loans with Defendant American Capital Partners Limited, Inc. In the first loan, which occurred in April 2005, American Capital loaned Cole $665,000.00. In return, Cole delivered 200,000 shares of Candy's Inc. as collateral.[1] In the second, which occurred in June 2005, American Capital loaned Cole $768,000.00. Cole delivered another 200,000 shares of Candy's as collateral.[2] At the time of each loan agreement, the parties also entered into escrow agreements under which the Candy's shares were

_____

[1] Candy's later changed its name to Iconix Brand Group, Inc. Cole is the President and Chief Executive Officer of Iconix.

[2] Speight executed these loan agreements in his capacity as President of American Capital.

2

to be held in escrow.[3]

In April 2006, Cole sought to prepay the balance of the first loan. He also decided he would prepay the balance of the second loan after the conclusion of the first year of that loan. Upon prepayment, his shares in Candy's were to be returned to him. On May 16, 2006, after a phone conversation between Cole's counsel and Defendant Emas, in which Emas falsely stated that he believed Cole had defaulted under the loan agreement and that he had released some of the shares held in escrow, Cole's counsel sent Emas a letter to ascertain the status of the shares held in escrow. Emas did not respond.

In actuality, Emas had long since disposed of all of the shares. The purported escrow account was actually Emas's personal brokerage account at Fordham Financial. Between May 4 and June 13, 2005, Emas sold all 400,000 of the Candy's shares, receiving approximately $2,143,337.00. A portion of the monies were used to fund the "loans" to Cole. The balance of the proceeds was divided amongst the defendants.

Cole brought this lawsuit in May 2006. During discovery, all of the

---

[3] In late September 2005, American Capital informed Cole that it had assigned the loans to Defendant Consolidated Financial Group, a company formed by Speight and Defendant Ellis. Cole was directed to make payments to Consolidated Financial at an address in New York City. Cole timely made payments throughout 2005 and early 2006. Cole was not aware that Consolidated Financial was controlled by Speight and Ellis.

defendants invoked their Fifth Amendment privilege in response to Cole's interrogatories and during his attempts to depose them. In light of documentary evidence presented by Cole and the defendants' invocations of the Fifth Amendment, the district court granted summary judgment to Cole. The district court awarded Cole $6,595,412.15 in damages. The district court calculated the damages by taking the value of the stock at the time Cole learned it had been improperly sold, subtracting the amount Cole received in "loans," adding the amount of "loan" payments made by Cole, and then applying pre- and post-judgment interest.

Speight appeals the district court's damage calculation.

## II.

"We review the district court's determination of the proper legal standard to compute damages de novo. The court's factual findings, however, will only be reversed if clearly erroneous." *A.A. Profiles, Inc. v. City of Fort Lauderdale*, 253 F.3d 576, 581 (11th Cir.2001) (citation omitted).

The parties agree that the central component of damages is the value of the Candy's stock that was pledged by Cole as collateral and improperly sold by the defendants. The district court calculated damages by taking the value of the stock at the time Cole learned the defendants had improperly sold it – *i.e.*, the value of

4

the stock in mid-May 2006.  At that time, the 400,000 shares were worth $6,352,000.00.  The defendants argue that the value of the stock should be calculated by aggregating the amount of money received each time the a portion of stock was improperly sold between in May and June of 2005.  The defendants calculate that amount to be $2,132,375.00.

Both sides also agree on the appropriate cases to consult in determining damages.  Before the district court and again on appeal, both point to a Second Circuit case, *Schultz v. Commodities Future Trading Commission*, 716 F.2d 136 (2d Cir. 1983).  There, the Second Circuit held that "the measure of damages for wrongful conversion of stock is either (1) its value at the time of conversion or (2) its highest intermediate value between notice of the conversion and a reasonable time thereafter during which the stock could have been replaced had that been desired, whichever of (1) or (2) is higher."  *Id.* at 141.  The district court adopted this approach, finding that it was in agreement with Florida law.  In this regard, it cited *Madison Fund, Inc. v. Charter Co.*, 427 F. Supp. 597 (S.D.N.Y. 1977), and *Berman v. Airlift International, Inc.*, 302 F. Supp. 1203 (N.D. Ga. 1969), as two federal cases applying the *Schultz* approach under Florida law.

We conclude that the district court did not err in calculating the damages. Cole argues that under Florida's choice of law analysis, New York law would

5

apply to this case, and thus, *Schultz* would control directly. In the alternative, he argues that even if Florida tort law applies the approach of *Schultz* is consonant with Florida law. We need not decide that argument because we conclude that the result is the same under both *Schultz* and Florida tort law. Under Florida law, "[t]he goal of damages in tort actions is to restore the injured party to the position it would have been in had the wrong not been committed." *Totale, Inc. v. Smith*, 877 So. 2d 813, 815 (Fla. 4th DCA 2004) (internal quotation marks omitted). In this regard, Florida applies a "flexibility theory" of damages. Under that approach, damages are calculated using either the "benefit of the bargain" rule or the "out of pocket" rule. *Id.* Courts are to use the rule that would more likely fully compensate the injured party. *Id.*

Here, if Cole had received the "benefit of the bargain" he entered into, then in or around May 2006, he would have previously received two loans, paid them back in full, and received his 400,000 shares of Candy's stock in return at that time. Neither party disputes that at that point the shares were valued at $15.88 per share, for a total amount of $6,352,000.00. Looking to *Schultz,* Cole was notified of the conversion of his stock in mid-May 2006. Again, the value of the stock at that time was $6,352,000.00. Through whatever lens you view the question, the result is the same.

6

Speight does not challenge the district court's application of pre- and post-judgment interest.

After thorough review, we affirm the district court's order entering final judgment in the amount of $6,595,412.15.

AFFIRMED.[4]

---

[4] Appellant's motion to file reply brief out of time is GRANTED.